**Louis SPITALNY and Betty Spitalny, his wife, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**William ERDWURM and Bart F. Erd-wurm, his wife, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 23934.**

United States Court of Appeals, Ninth Circuit.

July 29, 1970.

Elmer J. Kelsey (argued), Lee A. Jackson, Meyer Rothwacks, Melva M. Graney, Attys., Johnnie Walters, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Richard K. Burke, U. S. Atty., Phoenix, Ariz., for defendant-appellant.

Rex E. Lee (argued), John R. Christian, Jennings, Strouss, Salmon & Trask, Phoenix, Ariz., for plaintiffs-appellees.

John F. Beggan, Robt. F. Graham, James A. Velde, Gardner, Carton, Douglas, Chilgren & Waud, Chicago, Ill., amicus curiae.

Before MERRILL and KOELSCH, Circuit Judges, and WILKINS, District Judge.*

* Honorable Philip C. Wilkins, United States District Judge for the Eastern District of California, sitting by designation.

MERRILL, Circuit Judge:

Appellees brought suit for refund of income taxes and interest in the amount of $110,407.71 assessed against them as transferees of a wholly owned corporation liquidated in February, 1960. The judgment of the District Court (288 F. Supp. 650 (D.Ariz.1968)) was in their favor and the United States has taken this appeal.

The taxpayer corporation was engaged in the business of cattle feeding. Feed on hand, the cost of which had been fully deducted as an expense of doing business, was sold by the corporation pursuant to its plan of liquidation for $177,-437.37. The question presented is whether the corporation can treat the fully expensed feed as taking a zero basis and the full price received on sale as non-

recognized gain under § 337, Int.Rev. Code, 1954, 26 U.S.C. § 337.[1]

Appellees organized the All-State Cattle Feeding Company, a corporation to conduct the business of cattle feeding, in February, 1957. It filed four annual corporate income tax returns with fiscal years ending July 31. Each year it elected not to report inventories but to deduct from gross income for each period the cost of feed and supplies purchased during the year, as permitted under §§ 1.162–12 and 1.162–3 of the Regulations.[2]

On February 3, 1960, the corporation adopted a plan of liquidation pursuant to which all of its corporate assets were sold to an Arizona cattle company. Between August 1, 1959, and February 3, 1960, it had purchased feed in the total amount of $607,968.02. The sale price of its assets allocated to feed and supplies on hand the sum of $177,437.37.

---

1. *"Gain* or loss on sales or exchanges in *connection with certain liquidations.*

(a) *General Rule*—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

(b) *Property defined.—*

(1) *In General.*—For purpose of subsection (a), the term 'property' does not include—

(A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year * * *.

(2) *Nonrecognition with respect to inventory in certain cases.—*

Notwithstanding paragraph (1) of this subsection, if substantially all of the property described in subparagraph (A) of such paragraph (1) which is attributable to a trade or business of the corporation is, in accordance with this section, sold or exchanged to one person in one transaction, then for purposes

of subsection (a) the term 'property' includes—

(A) such property sold or exchanged * * *."

2. Income Tax Regulations, § 1.162–12 (1954 Code) provides in part: "The purchase of feed and other costs connected with raising livestock may be treated as expense deductions insofar as such costs represent actual outlay * * *."

The manner of reporting such expense deductions is dealt with in Income Tax Regulations, § 1.162–3 (1954 Code), *"Cost of Materials:*

Taxpayers carrying materials and supplies on hand should include in expenses the charges for materials and supplies only in the amount that they are actually consumed and used in operation during the taxable year for which the return is made, provided that the costs of such materials and supplies have not been deducted in determining the net income or loss or taxable income for any previous year. If a taxpayer carries incidental materials or supplies on hand for which no record of consumption is kept or of which physical inventories at the beginning and end of the year are not taken, it will be permissible for the taxpayer to include in his expenses and to deduct from gross income the total cost of such supplies and materials as were purchased during the taxable year for which the return is made, provided the taxable income is clearly reflected by this method."

In its income tax return for the fiscal year ending July 31, 1960, the corporation deducted the entire amount spent that year for feed and supplies. Since this deduction gave to the feed and supplies on hand a zero basis, it treated the entire sale price as nonrecognized gain under § 337.

The Commissioner refused to accept this result. He did not explicitly challenge the corporation's accounting practices, but included the sale price of $177,437.37 in the corporation's gross income and assessed a deficiency against appellees as transferees of the corporation. The deficiency was paid[3] and this suit followed.

In the District Court and here the Government asserts that since both deduction and sale occurred in the same taxable year, in effect what the Commissioner actually did was to disallow the expense deduction for purchase of feed to the extent of the sale price, under his authority to prevent distortion of income under § 446(b) of the Code, 26 U.S.C. § 446(b),[4] and § 1.162–3 of the Regulations.

We agree with the Government that distortion of income results from appellees' accounting method. The expense deduction as permitted by regulation is intended to reflect the cost of feed *actually* consumed during the taxable year and to accomplish over a period of years roughly the same result as would have been had through use of the inventory method, but by a simpler form of accounting. Certainly it could never have

been intended that the cash basis method, on liquidation, should provide such a startling advantage over the inventory method, which would truly reflect the cost of feed actually consumed. See C.I.R. v. Kuckenberg, 309 F.2d 202, 206 (9th Cir. 1962), cert. denied, 373 U.S. 909, 83 S.Ct. 1296, 10 L.Ed.2d 411 (1963).

Appellees protest that neither on audit nor before the District Court did the Commissioner seek to require the corporation to revert to the inventory method or any other method of accounting. It does appear that both before the District Court and here the Government's principal contention assumes the validity of the expense deduction and seeks to justify a restoration to income of the sale price under the tax benefit rule.[5]

The District Court rejected this application of that rule, relying on Anders v. Commissioner, 48 T.C. 815 (1967). Since the taking of this appeal the Tax Court has been reversed by the 10th Circuit in C.I.R. v. Anders, 414 F.2d 1283 (10th Cir.), cert. denied, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969).

The question there presented was whether the tax benefit rule should be held to apply to sales of "property" as defined in § 337 in those cases where the property had been fully expensed and had thereby received a zero basis. We agree with the 10th Circuit that it should. Just as bad debts written off and later recovered are restored to income, West Seattle National Bank of Seattle v. C.I.R., 288 F.2d 47 (9th Cir. 1961),[6] so costs

---

3. The $110,409.71 total included disallowance of two minor deductions which are not in issue here.

4. *"General rule for methods of accounting*
   \* \* \* \* \*
   (b) *Exceptions.*—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the

opinion of the Secretary or his delegate, does clearly reflect income."

5. "\* \* \* [I]f an amount deducted from gross income in one taxable year is recovered in a later year, the recovery is income in the later year." 1 Mertens Law of Federal Income Taxation § 7.34 at 103–04 [citations omitted.]

6. See also C. I. R. v. Kuckenburg, 309 F.2d 202 (9th Cir. 1962), cert. denied, 373 U.S. 909, 83 S.Ct. (1963) [anticipated in-

deducted but later recovered should be restored.

We concede that where both deductions and offsetting recovery occur in the same taxable year use of the "tax benefit rule" label is inappropriate. The rule contemplates the situation where a tax benefit has been received through deductions taken in past years. Here the Commissioner's treatment precludes the receipt of any benefit. However, tax benefit principles would seem to apply with even greater force in such a case as this.

The resulting rule seems simply to state the obvious. When costs are recovered in the taxable year in which they were incurred, the extent of deductible costs is accordingly reduced. Whether the Commissioner's ruling is regarded as disallowance of an item of expense or a restoration to income of the recovery is of no consequence. In neither case may the recovery be regarded as "gain" when so to regard it would result in a tax benefit the conferring of which serves to distort income.

Accordingly we are not persuaded by the contention of appellees (and the view of the Tax Court in Anders v. Commissioner, *supra*), that the crucial question is whether the feed and supplies sold constituted "property" as defined in § 337(b) (1) and (2); that, being "property," application of tax benefit principles would serve to deny treatment of that "gain" as nonrecognizable contrary to the express provisions of the Code.

We agree that the feed and supplies on hand are "property" under § 337(b) and, accordingly, that "gain" realized on their sale shall not be recognized. The crucial question, however, is whether "gain" was realized. The assignment of a zero basis to expensed items is not in response to adjustments in valuation. It amounts, rather, to a present fictional conversion of that "property" into a consumed item of expense. If the feed and supplies are to revert to "property" they should be reconverted. They should not at the same time be property and still retain attributes of a fictional nonentity.

Under these circumstances what tax benefit principles do for purposes of computing gain under § 337 is to give to the property sold its true basis as property and deny to it the benefit of an adjusted basis which is false and distorting and inconsistent with its very existence as property.

We conclude that the District Court (not having before it the decision of the 10th Circuit in C.I.R. v. Anders, *supra*), erred in holding the entire sale price of the feed on hand to be nonrecognized gain under § 337.

One difficulty remains. It cannot be ascertained from the present record what the cost (and the basis) of this feed was. If the feed was sold in liquidation at a greater figure than cost the sale price does to that extent represent gain which would be nonrecognizable under § 337. In our view appellees should have the opportunity to establish the facts in this respect.

Reversed and remanded with instructions that judgment be entered for appellant denying refund, subject to the right of appellees, within 30 days of the issuance of our mandate, to move to reopen proceedings below for the purpose of establishing cost of the feed and supplies sold on liquidation.

come on fully performed construction contracts]; Family Record Plan, Incorporated v. C. I. R., 309 F.2d 208 (9th Cir. 1962), cert. denied, 373 U.S. 910, 83 S.Ct. 1297, 10 L.Ed.2d 411 (1963) [sale of customer contracts].