**Frank E. CONNERY, Appellant in No. 19,432**

v.

**UNITED STATES of America.**

**Max KRAVEN, Appellant in No. 19,433**

v.

**UNITED STATES of America.**

**Nos. 19432, 19433.**

United States Court of Appeals, Third Circuit.

Argued March 14, 1972.

Decided May 22, 1972.

Herbert M. Gannet, Stephen P. Scher, Newark, N. J., for appellants.

Steven Shapiro, Dept. of Justice, Tax Division, Washington, D. C., for appellee.

Before MAX ROSENN, and JAMES ROSEN, Circuit Judges and TEITELBAUM, District Judge.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of New Jersey which held that the appellants in these consolidated cases were not entitled to recover income tax and deficiency interest paid by them as transferees of the assets of Frankay Laboratories, Inc., a New Jersey corporation. The case raises several issues of first impression in this circuit.

The facts found by the district court which are relevant to our discussion and decision may be summarized as follows: Frankay, in the business of making and selling ethical pharmaceuticals, was incorporated on November 4, 1947, and dissolved on May 13, 1959. The appellants were shareholders throughout its existence. For federal income tax purposes, Frankay reported its income and deductions on the accrual method of accounting, and filed returns with the District Director of Internal Revenue on the basis of a fiscal year ending on October 31st.

By agreement dated March 23, 1959, Frankay sold its entire assets and business to Cooper Tinsley Laboratories, Inc. (Cooper Tinsley). The sale, closed on April 30, 1959, was made pursuant to a plan of liquidation adopted in conformity with the provisions of Section 337 of the Internal Revenue Code of 1954. Frankay fully complied with Section 337.

The sales contract of March 23, 1959, provided, in part, that:

> Of the aggregate consideration for which the buyer is purchasing the assets and business of the Seller pursuant to this Agreement, $375,464 is paid as follows:

\*      \*      \*      \*      \*      \*

Prepaid advertising $40,000.

Substantially all of Frankay's advertising was prepared and supervised since 1954 by the Robert E. Wilson Agency (Wilson). Wilson handled Frankay's advertising campaigns during Frankay's fiscal year 1958 and the fiscal period of 1959, as it did in other years. Wilson's control of the advertising process was almost complete. Wilson paid all costs, then billed Frankay for its commission as well as the costs incurred, with the exception of the cost of sample pills manufactured by a subsidiary of Frankay called Arlington Laboratories. The advertising supplied by Wilson consisted of circulars, sample "sleeves" to doctors, and magazine advertisements in medical journals.

During the fiscal year ending October 31, 1958, Frankay incurred and paid advertising expenses of $99,087.50, and deducted that amount on its income tax return filed for that year. During the fiscal period beginning November 1, 1958, and ending May 13, 1959, Frankay incurred, paid, and deducted advertising expenses of $82,036.85.

Among the expenses incurred by Frankay in connection with the sale of its assets and its subsequent liquidation were legal fees, in the amount of $3,500. Although accrued and expensed on the books and records of Frankay, these legal fees were paid by Cooper Tinsley on June 26, 1959. Of the $3,500 charged for attorney's fees, $500 was charged for services concerning the sale of Frankay's business, and $3,000 was charged for services concerning the liquidation and dissolution of Frankay.

Pursuant to the plan of liquidation, Frankay distributed to its shareholders on May 22, 1959, all the assets which remained after the sale to Cooper Tinsley. Thereafter, the Internal Revenue Service audited Frankay's income tax return for the fiscal period ending May 13, 1959. The Commissioner determined that Frankay had additional income and unallowable deductions as follows:

Prepaid advertising: $40,000
Legal fees: $ 3,500.

Because Frankay had been liquidated, the Commissioner determined that the liability for the taxes allegedly due from Frankay should be borne by the taxpayers Connery and Kraven, formerly shareholders of the liquidated corporation and ultimately transferees of its assets.

The assessment of the Commissioner against the taxpayers was predicated upon the following conclusions: Since the $40,000 received under the sales contract for advertising material had been recovered in full through ordinary business deductions for advertising in a prior year and in the year of sale, (1) the portion allocable to the prior year constituted taxable ordinary income to the extent of the tax benefit secured by Frankay from the deduction taken in that year, and (2) the portion allocable to the year of the sale must be treated as taxable ordinary income or as an offset to the advertising expense deduction taken for that year. Moreover, the Commissioner reasoned that legal fees expended in connection with selling the corporate assets pursuant to Section 337 were capital in nature, and not deductible as ordinary and necessary business expenses.

The district court agreed with the position taken by the Commissioner. This appeal by the taxpayers followed.

The first issue raised on this appeal concerns whether tax benefit principles [1] apply where the recovery of costs which had already been expensed comes from a sale of corporate assets pursuant to a Section 337 liquidation. The general principles involved have been subjected to close analysis in other circuits.

The 10th Circuit, in C. I. R. v. Anders, 414 F.2d 1283 (10th Cir. 1969), considered:

. . . whether the amount received for rental items of apparel, towels and the like in a sale of corporate assets preceding a complete liquidation was a gain from the sale of property within the provisions of § 337 of the Internal Revenue Code of 1954 for non-recognition of gain to the corporation where the cost of such items had been fully expensed when they were purchased, or whether such gain was taxable as ordinary income to the corporation under tax benefit principles.

Id., at 1284–1285.

The court held that Congress had not intended to eliminate tax benefit principles from application in a § 337 transaction, since "[t]he statute used a definition of property in § 337 parallel to that of assets in § 1221 of the 1954 Code." Id., at 1287. It noted that other cases had applied tax benefit principles to the predecessor rule of § 1221.[2] Moreover, the court reasoned that "there is no provision in the statute showing an intent to alter or bar the application in cases under § 337 of tax benefit principles fashioned under other provisions of the Code." Id., at 1287. Therefore, it concluded, that § 337 did not intend to ef-

---

1. According to Mertens, the general tax benefit rule, "not expressly stated in the Code but developed through the case law, is that, if an amount deducted from gross income in one taxable year is recovered in a later year, the recovery is income in the later year." 1 Mertens Law of Federal Income Taxation § 7.34 at 103–04. (footnotes omitted).

2. See also, Tax-Free Sales in Liquidation under Section 337, 76 Harv.L.Rev. 780, 793–794 (1963).

fect a disregard of tax benefit principles in liquidation cases.

In Spitalny v. United States, 430 F.2d 195 (9th Cir. 1970), the 9th Circuit confronted the same problem, but in the context of:

> [a] taxpayer corporation . . . engaged in the business of cattle feeding. Feed on hand, the cost of which had been fully deducted as an expense of doing business, was sold by the corporation pursuant to its plan of liquidation. . . . The question presented is whether the corporation can treat the fully expensed feed as taking a zero basis and the full price received on sale as nonrecognized gain under § 337. . . .

Id., at 196.

The court agreed with the 10th Circuit that:

> Just as bad debts written off and later recovered are restored to income, West Seattle National Bank of Seattle v. C. I. R., 288 F.2d 47 (9th Cir. 1961), so costs deducted but later recovered should be restored.

Id., at 197–198. (footnotes omitted)

■ We find the reasoning and position of these cases persuasive. We hold that tax benefit principles apply to a § 337 transaction.

■ Our next concern is whether the peculiar nature of prepaid advertising costs works an exception to the general rule. We do not find that it does.

The taxpayers argue that *Spitalny*— which held applicable tax benefit principles even when the deduction and return occurred within the same year—should not be followed, because in *Spitalny* there occurred distortion of income, while in the instant case, there is no distortion. The argument is predicated on the as-

sumption that in *Spitalny*, the cattle feed expensed was in fact an addition to inventory, while in the instant case, the pre-paid advertising was actually consumed when paid.

We find no merit in this argument. The critical issue is that "[w]hen costs are recovered in the taxable year in which they were incurred, the extent of deductible costs is accordingly reduced." Id., at 198. In both *Spitalny* and the instant case, a tax deduction was taken by the company in question. In both cases, the amount deducted was recovered. The "distortion" manifests itself *in the return* of previously deducted income. This was the position taken in *Spitalny:*

> Whether the Commissioner's ruling is regarded as disallowance of an item of expense or a restoration to income of the recovery is of no consequence. In neither case may the recovery be regarded as "gain" when so to regard it would result in a tax benefit the *conferring of which serves to distort income.*

Id., at 198 (emphasis supplied).

We next consider the issue of the attorney's fees. The Government has withdrawn its contention that the total $3,500 in legal expenses is not deductible. It has conceded in this appeal that $3,000 of this amount is deductible as a business expense of the seller. However, the Government contends that the portion of the legal fees allocable to the sale of the assets ($500) is not deductible since it is capital in nature. The circuits are split on the issue of whether costs incident to the sale of capital assets can be deducted as an ordinary and necessary business expense. The 4th and 10th Circuits believe that such expenses are properly deductible; the 7th, 8th and 6th Circuits have held them not deductible.[3]

---

3. Cases holding that such fees may be deducted: Pridemark, Inc. v. Commissioner of Internal Revenue, 345 F.2d 35 (4th Cir. 1965) ; United States v. Mountain States Mixed Feed Co., 365 F.2d 244 (10th Cir. 1966). Cases holding that such fees are not deductible: Alphaco, Inc. v. Nelson, 385 F.2d 244 (7th Cir. 1967) ; United States .v. Morton, 387 F. 2d 441 (8th Cir. 1968) ; Lanrao, Inc. v. United States, 422 F.2d 481 (6th Cir. 1970), cert. denied, 398 U.S. 928, 90 S.Ct. 1816, 26 L.Ed.2d 89 (1970).

We believe the better view is that such expenses are not properly deductible for the following reasons: First, since capital gain is given no recognition and has no tax incidence to the corporation under the statute, legal fees paid to establish that gain should be likewise disregarded. Second, such legal fees are generally offset against capital gain realized in a sale and are not deducted as an ordinary business expense. Spreckels v. Helvering, C.I.R., 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073 (1942). These reasons, and others in support of the position we take, are more fully stated in Alphaco, Inc. v. Nelson, 385 F.2d 244 (7th Cir. 1967), an opinion which we find persuasive.

Finally, appellants make a general attack upon the sufficiency of the evidence, alleging that the contract containing the prepaid advertising notation is ambiguous. Appellants argue that other evidence shows that there was no bargaining for individual assets such as prepaid advertising.

We have examined the complete record, including the notes of testimony, and the various depositions. We believe that the evidence sustains the Government. But, in any event, the rule we enunciated in C. I. R. v. Danielson, 378 F.2d 771 (3d Cir. 1967), cert. denied, 389 U.S. 858, 88 S.Ct. 94, 19 L.Ed.2d 123 (1967), prohibits an inquiry beyond the sales contract executed by the parties. In *Danielson*, this court held in an opinion written by now Chief Judge Seitz that:

> [A] party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc.

Id., at 775.

The taxpayer here has not adduced such proof as would permit inquiry beyond the specific provisions of the sales contract.

We have considered the additional arguments raised and find them also without merit.

The district court is directed to modify its judgment with respect to the attorney's fees in accordance with this opinion. In all other respects, the judgment of the district court will be affirmed.