**HEMPT BROS., INC., Appellant,**

v.

.UNITED STATES of America.

No. 73–1296.

United States Court of Appeals,
Third Circuit.

Argued Nov. 2, 1973.

Decided Jan. 14, 1974.

Sheldon M. Bonovitz, John F. Fansmith, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for appellant.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Ernest J. Brown, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before ALDISERT and WEIS, Circuit Judges, and LATCHUM, District Judge.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In this appeal by a corporate taxpayer from a grant of summary judgment in favor of the government in a claim for refund, we are called upon to decide the proper treatment of accounts receivable and of inventory transferred from a cash basis partnership to a corporation organized to continue the business under 26 U.S.C. § 351(a).[1] This appeal illustrates the conflict between the statutory purpose of Section 351, postponement of recognition of gain or loss, and the assignment of income and tax benefit doctrines.

The facts were wholly stipulated; therefore, they may be summarized as set forth by the government in its brief:

> The taxpayer is a Pennsylvania corporation with its principal place of business in Camp Hill, Pennsylvania. It files its federal income tax returns for a fiscal year beginning March 1.
>
> From 1942 until February 28, 1957, a partnership comprised of Loy T. Hempt, J. F. Hempt, Max C. Hempt,

---

1. Sec. 351. Transfer to Corporation Controlled by Transferor.

(a) General Rule.—No gain or loss shall be recognized if property is transferred to a corporation (including, in the case of transfers made on or before June 30, 1967, an investment company) by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.

and the George L. Hempt Estate was engaged in the business of quarrying and selling stone, sand, gravel, and slag; manufacturing and selling ready-mix concrete and bituminous material; constructing roads, highways, and streets, primarily for the Pennsylvania Department of Highways and various political subdivisions of Pennsylvania, and constructing driveways, parking lots, street and water lines, and related accessories.

The partnership maintained its books and records, and filed its partnership income tax returns, on the basis of a calendar year and on the cash method of accounting, so that no income was reported until actually received in cash. Accordingly, in computing its income for federal income tax purposes, the partnership did not take uncollected receivables into income, and inventories were not used in the calculation of its taxable income, although both accounts receivable reflecting sales already made and physical inventories existed to a substantial extent at the end of each of the partnership's taxable years. Rather than using the inventory method of accounting, the partnership deducted the costs of its physical inventories of sand, gravel, and stone as incurred.

On March 1, 1957, the partnership business and most of its assets were transferred to the taxpayer solely in exchange for taxpayer's capital stock, the 12,000 shares of which were issued to the four members of the partnership. These shares constituted 100% of the issued and outstanding shares of the taxpayer. This transfer was made pursuant to Section 351(a) of the Internal Revenue Code of 1954; . . . . Thereafter, the taxpayer conducted the business formerly conducted by the partnership.

Among the assets transferred by the partnership to the taxpayer for taxpayer's shares of stock were accounts receivable in the amount of $662,824.40 arising from performance of construction projects, sales of stone, sand, gravel, etc., and rental of equipment prior to March 1, 1957. Also among the assets transferred were physical inventories of sand, gravel, and stone, with respect to which the partnership had deducted costs of $351,266.05 and the value of which was no less than $351,266.05.

Commencing with its initial fiscal year [which] ended February 28, 1958, taxpayer maintained its books and filed its corporation income tax returns on the cash method of accounting and, accordingly, did not take uncollected receivables into income and did not use inventories in the calculation of its taxable income. In its taxable years ending in 1958, 1959, and 1960, taxpayer collected the respective amounts of $533,247.87, $125,326.71 and $4,249.72 of the accounts receivable in the aggregate amount of $662,824.40 *(sic)* that transferred to it, and included those amounts in income in computing its income for its federal income tax returns for those years, respectively.

As a result of an examination extending over a period of years, it was determined by the Commissioner of Internal Revenue, and agreed to by the taxpayer, that the use of the cash receipts and disbursements method of accounting with regard to purchases and sales, without taking into account merchandise on hand at the beginning and end of the taxable year, did not clearly reflect taxpayer's income. Accordingly, taxpayer's income was adjusted as set forth in an examination report of August 24, 1964 . . . to accrue unreported sales [accounts receivable] made during the taxable years in question and to take into account inventories in computing its cost of goods sold. In computing taxpayer's cost of goods sold under the inventory method, for the fiscal year ended February 28, 1958, the Commissioner of Internal Revenue, in conjunction with his accrual method treatment, fixed the beginning inven-

tory of stone, sand, and gravel, which had been transferred to the taxpayer by the partnership, at zero, and the ending inventory at $258,201.35. The result was an increase in taxpayer's taxable income for the fiscal year ended February 28, 1958, in the amount of $258,201.35.

The Commissioner of Internal Revenue assessed deficiencies in taxpayer's federal income taxes for its fiscal years ending February 28, 1958, and 1959. The taxpayer paid the amounts in 1964, and in 1965 filed claims for refund of $621,218.09 plus assessed interest.[2] The claims were disallowed in full on September 24, 1968, and the district court action was timely instituted on December 5, 1968.

The district court held: (1) taxpayer was properly taxable upon collections made with respect to accounts receivable which were transferred to it in conjunction with the Section 351 incorporation, and (2) the court lacked jurisdiction to entertain taxpayer's contention that the tax-benefit theory of recovery entitled it to an opening inventory of not less than $351,266.05, since that theory of recovery was not presented in taxpayer's claim for refund. Hempt Bros., Inc. v. United States, 354 F.Supp. 1172 (M.D. Pa.1973).

## I.

■ Taxpayer argues here, as it did in the district court, that because the term "property" as used in Section 351 does not embrace accounts receivable, the Commissioner lacked statutory authority to apply principles associated with Section 351. The district court properly rejected the legal interpretation urged by the taxpayer.

The definition of Section 351 "property" has been extensively treated by the Court of Claims in E. I. Du Pont de Nemours and Co. v. United States, 471 F.2d 1211, 1218–1219 (Ct.Cl.1973), describing the transfer of a non-exclusive license to make, use and sell area herbicides under French patents:

Unless there is some special reason intrinsic to . . . [Section 351] . . . the general word "property" has a broad reach in tax law. . . . For section 351, in particular, courts have advocated a generous definition of "property," . . . and it has been suggested in one capital gains case that nonexclusive licenses can be viewed as property though not as capital assets. . . .

We see no adequate reason for refusing to follow these leads.

*We fail to perceive any special reason why a restrictive meaning should be applied to accounts receivables so as to exclude them from the general meaning of "property." Receivables possess the usual capabilities and attributes associated with jurisprudential concepts of property law. They may be identified, valued, and transferred. Moreover, their role in an ongoing business must be viewed in the context of Section 351 application. The presence of accounts receivable is a normal, rather than an exceptional accoutrement of the type of business included by Congress in the transfer to a corporate form. They are* "commonly thought of in the commercial world as a positive business asset." Du Pont v. United States, *supra,* at 1218. As aptly put by the district court: "There is a compelling reason to construe 'property' to include . . . [accounts receivable]: a new corporation needs working capital, and accounts receivable *can be an important source of liquidity.*" Hempt Bros., Inc. v. United States, *supra,* at 1176.[3] In any event,

---

2. The Commissioner of Internal Revenue assessed deficiencies in the amounts of $364,154.20 plus interest of $125,740.42 and $75,995.46 plus interest of $24,343.53 for fiscal years ending in 1958 and 1959 respectively. Taxpayer filed claims for refund of $456,218.76 plus assessed interest for fiscal

1958, $113,163.03 plus assessed interest for fiscal 1959 and $51,836.30 for fiscal 1960.

3. Du Pont v. United States, *supra,* at 1214, citing P. A. Birren & Son, Inc. v. Commissioner, 116 F.2d 718 (7th Cir. 1940), observed that nonrecognition under Section 351

this court had no difficulty in characterizing a sale of receivables as "property" within the purview of the "no gain or loss" provision of Section 337 as a "qualified sale of property within a 12-month period." Citizens Acceptance Corp. v. United States, 462 F.2d 751, 756 (3d Cir. 1972).

■ The taxpayer next makes a strenuous argument that "[t]he government is seeking to tax the wrong person."[4] It contends that the assignment of income doctrine as developed by the Supreme Court applies to a Section 351 transfer of accounts receivable so that the transferor, not the transferee-corporation, bears the corresponding tax liability. It argues that the assignment of income doctrine dictates that where the right to receive income is transferred to another person in a transaction not giving rise to tax at the time of transfer, the transferor is taxed on the income when it is collected by the transferee; that the only requirement for its application is a transfer of a right to receive ordinary income; and that since the transferred accounts receivable are a present right to future income, the sole requirement for the application of the doctrine is squarely met. In essence, this is a contention that the nonrecognition provision of Section 351 is in conflict with the assignment of income doctrine and that Section 351 should be subordinated thereto. Taxpayer relies on the seminal case of Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 16, 74 L.Ed. 600 (1930), and its progeny[5] for support of its proposition that the application of the doctrine is mandated whenever one transfers a right to receive ordinary income.

On its part, the government concedes that a taxpayer may sell for value a claim to income otherwise his own and he will be taxable upon the proceeds of the sale. Such was the case in Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958), in which the taxpayer-corporation assigned its oil payment right to its president in consideration for his cancellation of a $600,000 loan. Viewing the oil payment right as a right to receive future income, the Court applied the reasoning of the assignment of income doctrine, normally applicable to a gratuitous assignment, and held that the consideration received by the taxpayer-corporation was taxable as ordinary income since it essentially was a substitute for that which would otherwise be received at a future time as ordinary income.

Turning to the facts of this case, we note that here there was the transfer of accounts receivable from the partnership to the corporation pursuant to Section 351. We view these accounts receivable as a present right to receive future income. In consideration of the transfer of this right, the members of the partnership received stock—a valid consideration. The consideration, therefore, was essentially a substitute for that which would otherwise be received at a future time as ordinary income to the cash basis partnership. Consequently, the hold-

---

has been granted for accounts receivable. In the recent case of Thatcher v. Commissioner, 61 T.C. 28 (42 U.S.L.W. 2228, October 30, 1973), the Tax Court reaffirmed its decision in Raich v. Commissioner, 46 T.C. 604 (1966), holding that accounts receivable transferred by a cash basis taxpayer to a corporation under Section 351 had a zero basis. By placing a tax basis in that which was transferred, the Tax Court by implication assumed that accounts receivable are "property" within the meaning of Section 351.

4. We put aside the pragmatic consideration that the transferee-corporate taxpayer raises the argument that the partnership should

be taxed at a time when the statute of limitations has presumably run against the transferor partners, who ostensibly are the stockholders of the new corporation.

5. United States v. Basye, 410 U.S. 441, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973) ; Commissioner v. First Security Bank of Utah, 405 U.S. 394, 92 S.Ct. 1085, 31 L.Ed.2d 318 (1972) ; Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949) ; Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948) ; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81 (1940) ; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940).

ing in *Lake* would normally apply, and income would ordinarily be realized, and thereby taxable, by the cash basis partnership-transferor at the time of receipt of the stock.

But the terms and purpose of Section 351 have to be reckoned with. By its explicit terms Section 351 expresses the Congressional intent that transfers of property for stock or securities will not result in recognition. It therefore becomes apparent that this case vividly illustrates how Section 351 sometimes comes into conflict with another provision of the Internal Revenue Code or a judicial doctrine,[6] and requires a determination of which of two conflicting doctrines will control.

As we must, when we try to reconcile conflicting doctrines in the revenue law, we endeavor to ascertain a controlling Congressional mandate. Section 351 has been described as a deliberate attempt by Congress to facilitate the incorporation of ongoing businesses and to eliminate any technical constructions which are economically unsound.[7]

Appellant-taxpayer seems to recognize this and argues that application of the *Lake* rationale when accounts receivable are transferred would not create any undue hardship to an incorporating taxpayer. "All a taxpayer [transferor] need do is withhold the earned income items and collect them, transferring the net proceeds to the Corporation. Indeed . . . the transferor should retain both accounts receivable and accounts payable to avoid income recognition at the time of transfer and to have sufficient funds with which to pay accounts payable. Where the taxpayer [transferor] is on the cash method of accounting [as here], the *deduction* of the accounts payable would be applied against the income generated by the accounts receivable." (Appellant's Brief at 32.)

While we cannot fault the general principle "that income be taxed to him who earns it," to adopt taxpayer's argument would be to hamper the incorporation of ongoing businesses; additionally it would impose technical constructions which are economically and practically unsound. None of the cases cited by taxpayer, including *Lake* itself, persuades us otherwise. In *Lake* the Court was required to decide whether the proceeds from the assignment of the oil payment right were taxable as ordinary income or as long term capital gains. Observing that the provision for long term capital gains treatment "has always been narrowly construed so as to protect the revenue against artful devices," 356 U.S. at 265, 78 S.Ct. at 694, the Court predicated its holding upon an emphatic distinction between a conversion of a capital investment—"income-producing property"—and an assignment of income *per se*. "The substance of what was assigned was the right to receive future income. The substance of what was received was the present value

---

6. Weiss, Problems in the Tax-Free Incorporation of a Business, 41 Ind.L.J. 666, 676 (1966). *See, e. g.,* Henry McK. Haserot, 41 T.C. 562 (1964), rev'd and rem'd 355 F.2d 200 (6th Cir. 1965).

7. "One of the purposes of this section [Section 202(c)(3) of the Revenue Act of 1921] was to permit changes in form [of business] involving no change in substance to be made without undue restriction from the tax laws." Note, Section 351 of the Internal Revenue Code and "Mid-Stream" Incorporations, 38 U.Cin.L.Rev. 96 (1969). *See,* S.Rep.No.275, 67th Cong. 1st Sess. 11 (1921). This intention is also reflected in the report of the House of Representatives accompanying § 351 of the Internal Revenue Code of 1954. H.R.Rep.No.1337, 83rd Cong. 2d Sess. 34 (1954).

The House Ways and Means Committee recommended that nonrecognition treatment be granted for incorporation, reorganization and certain other types of exchanges to "permit business to go forward with the readjustments required by existing conditions" and to prevent "taxpayers from taking colorable losses in wash sales and other fictitious exchanges." See H.R.Rep.350, 67th Cong., 1st Sess. 10 (1921). The Senate Finance Committee added that such treatment would eliminate "many technical constructions which are economically unsound." See S.Rep.275, 67th Cong., 1st Sess. 12 (1921).

Weiss, *supra,* 41 Ind.L.J. 666 n. 4 (1966).

of income which the recipient would otherwise obtain in the future." *Ibid.*, at 266, 78 S.Ct. at 695. A Section 351 issue was not presented in *Lake*. Therefore the case does not control in weighing the conflict between the general rule of assignment of income and the Congressional purpose of nonrecognition upon the incorporation of an ongoing business.[8]

We are persuaded that, on balance, the teachings of *Lake* must give way in this case to the broad Congressional interest in facilitating the incorporation of ongoing businesses. As desirable as it is to afford symmetry in revenue law, we do not intend to promulgate a hard and fast rule.[9] We believe that the problems posed by the clash of conflicting internal revenue doctrines are more properly determined by the circumstances of each case. Here we are influenced by the fact that the subject of the assignment was accounts receivable for partnership's goods and services sold in the regular course of business, that the change of business form from partnership to corporation had a basic business purpose and was not designed for the purpose of deliberate tax avoidance, and by the conviction that the totality of circumstances here presented fit the mold of the Congressional intent to give nonrecognition to a transfer of a total business from a non-corporate to a corporate form.

But this too must be said. Even though Section 351(a) immunizes the transferor from immediate tax consequences, Section 358[10] retains for the transferors a potential income tax liability to be realized and recognized upon a subsequent sale or exchange of the stock certificates received. As to the transferee-corporation, the tax basis of the receivables will be governed by Section 362.[11]

---

**8.** A second issue in *Fleming*, a companion case to *Lake*, raised the question whether an oil payment for real estate was a "like kind" exchange under § 112(b)(1) of the Internal Revenue Code of 1939. The Court held that the exchange was not "like kind" since its effect is a transfer of future income from oil leases in exchange for real estate. There is no "like kind" requirement under Section 351. *See* note 1, *ante.*

**9.** The Commissioner has apparently taken the position that irrespective of the general principle that income is based upon he who earns it, other considerations should normally control Section 351 transfers. "However, the Service's ruling policy apparently is subject to the proviso that the taxpayer enter into a closing agreement assuring that the corporation will report the income reflected in the receivables upon their collection or other disposition. It would also appear that favorable rulings will not be issued where the timing of the transfer will be such as to result in a distortion of income. For example, such a ruling presumably could not be obtained if a seasonable business were to be incorporated during the portion of the year occurring after sizeable operating expenses had been incurred but before the income attributable thereto was collected." Weiss, *supra*, 41 Ind.L.J. at 681 (footnote omitted).

**10.** Sec. 358. Basis to Distributees.
(a) *General Rule.*—In the case of an exchange to which section 351, 354, 355, 356, 361, or 371(b) applies—

(1) *Nonrecognition property.*—The basis of the property permitted to be received under such section without the recognition of gain or loss shall be the same as that of the property exchanged—
(A) deceased by—
(i) the fair market value of any other property (except money) received by the taxpayer,
(ii) the amount of any money received by the taxpayer, and
(iii) the amount of loss to the taxpayer which was recognized on such exchange, and
(B) increased by—
(i) the amount which was treated as a dividend, and
(ii) the amount of gain to the taxpayer which was recognized on such exchange (not including any portion of such gain which was treated as a dividend).
(2) *Other property.*—The basis of any other property (except money) received by the taxpayer shall be its fair market value.

**11.** Sec. 362. *Basis to Corporations*
(a) *Property acquired by issuance of stock or as paid-in surplus.*—If property was acquired on or after June 22, 1954, by a corporation—
(1) in connection with a transaction to which section 351 (relating to transfer of property to corporation controlled by transferor) applies, or
(2) as paid-in surplus or as a contribution to capital,

## II.

The taxpayer contends that the court erred in ruling that its inventory argument was not reasonably encompassed within its claim for refund, and that had the court considered this contention for the fiscal year commencing March 1, 1957, the taxpayer-corporation would have been entitled to a beginning inventory of $351,266.05 instead of zero by application of the tax benefit rule.

The government restates the reason for the district court's refusal to consider taxpayer's argument but by its brief advises: "We believe it unnecessary for this Court to explore the often obscure distinction between the facts to support a claim and the theory of a claim" and that "[w]ithout joining in the debate over facts versus theory, examination of the substance of taxpayer's claim for inventory adjustment makes it clear that the facts asserted in its claim for refund do not support it and the agreed facts negative it." (Appellee's brief at 19.) Regardless of the procedural question, we are persuaded that appellant's tax benefit argument does not apply to this factual complex, and "[w]e pass at once to a consideration of . . . [the merits]." B. F. Goodrich Co. v. United States, 321 U.S. 126, 64 S.Ct. 471, 88 L. Ed. 602 (1944).

The tax benefit rule can be simply stated: If a taxpayer makes an expenditure or suffers a loss for which it takes a deduction giving rise to a reduction in its income tax and later recovers the funds or property that it has spent or lost, it must take the amount recovered as income. Connery v. United States, 460 F.2d 1130, 1132 (3d Cir. 1972); Alice Phelan Sullivan Corp. v. United States, 381 F.2d 399, 401–402 (Ct.Cl.1967).

Applying this rule to the facts of this case taxpayer contends that partnership's receipt of stock in exchange for inventory previously expensed but presently valued at $351,266.05 constituted a "recovery" which stepped up the basis of the inventory from zero to $351,266.05 and that this stepped-up basis became the basis to the partnership and the corporation under Sections 358 and 362.

Relying on Nash v. United States, 398 U.S. 1, 90 S.Ct. 1550, 26 L.Ed.2d 1 (1970), and the various courts of appeals decisions in Commissioner v. Anders, 414 F.2d 1283 (10th Cir. 1969); Spitalny v. United States, 430 F.2d 195 (9th Cir. 1970); Connery v. United States, *supra*, and Citizens' Acceptance Corp. v. United States, *supra*, taxpayer proceeds to equate "value" of the inventory with tax "basis" as conceptualized in Sections 358 and 362. This keystone in the taxpayer's arch of reasoning proves to be most fragile upon close inspection.

Although Justice Douglas in *Nash* addressed a transfer of receivables under Section 351(a), the Court did not have before it the critical question posed here —whether a partnership's "basis," and ultimately the corporation's "basis," in a previously expensed inventory is equal to the "value" of the inventory when transferred.

"In *Nash* the Court held that when eight partnerships transferred their assets to eight newly formed corporations in exchange for shares in the corporations—transfers that produced no gain or loss under § 351 of the Internal Revenue Code—there was no 'recovery' of the bad debt reserves under the tax benefit rule '[s]ince the reserve for purposes of this case was deemed to be reasonable and the value of the stock received upon the transfer was equal to the *net value* of the receivables. . . .' 398 U.S., at 4, 90 S.Ct., at 1552 (emphasis in original)." Citizens' Acceptance Corp. v. United States, *supra*, 462 F.2d at 754. While it is true that Justice Douglas stated that "[a]ll that petitioners received from the corporations were secu-

---

then the basis shall be the same as it would be in the hands of the transferor, increased

in the amount of gain recognized to the transferor on such transfer.

rities equal in value to the net worth of the accounts transferred, that is the face value less the amount in reserve for bad debts", 398 U.S. at 4, 90 S.Ct. at 1551, the sole issue before the Court was whether such receipt constituted a "recovery" within the meaning of the tax benefit rule. It was not necessary for the *Nash* Court ever to reach the question of the tax "basis" in the hands of either the transferor or transferee. Thus, the taxpayer would have us read into *Nash* a holding which did not appear therein, which was not posed by the facts, and which does not inexorably nor logically follow therefrom.

Nor may the taxpayer find solace in the decisions of the various courts of appeals upon which it relies. At issue in *Anders* and *Spitalny* were inventories which had been completely expensed and therefore had a zero basis. After the inventories were sold, the liquidated corporations attempted to assert a no-gain immunity from tax liability by virtue of the operation of § 337.[12] In each case the court held the sale proceeds would not be considered as non-recognizable gain.

We find nothing in the teachings of the Ninth and Tenth Circuits supporting taxpayer's contention that in a Section 351(a) transfer the accounting basis for property must equal the actual or market value thereof. At the time taxpayer's inventory was totally expensed on the cash basis books of the partnership that property had mercantile value in the sense as described by Justice Douglas in *Nash* but for accounting purposes and as a tax basis it still had a zero value. The mere fact that an asset has been transferred under Section 351(a) from a partnership ownership to a corporate ownership does not in itself alter its tax basis.

We now turn to our decisions in *Connery* and *Citizens*. The *Connery* issue was whether tax benefit principles applied following recovery of previously expensed prepaid advertising. We agreed with the Commissioner in the application of the tax benefit rule because the taxpayer realized income equivalent to the value of the previously expensed advertising costs. We said that the taxpayer incurred a tax liability based on the difference between a zero basis and the amount previously expensed.

The difficulty presented in both Section 337 and Section 351 cases is that the statute expressly provides for no-gain and no-loss tax consequences by virtue of the actual liquidation or transfer. Nothing in the statutory schema permits an immunization of normal tax consequences arising out of those separate activities which may accompany a liquidation under Section 337 or a transfer under Section 351 but which are not inherently a necessary aspect of the liquidating or transferring process. The tax imposed in *Connery* was not the result of the liquidation process *per se*; it was imposed because of the recovery of an item previously expensed. The happenstance that the recovery took place as an additional feature of the liquidating process does not immunize that recovery from normal tax consequences. The prepaid advertising expenses had a zero basis before the liquidation process began; it had the same basis during the liquidation process.

The *Citizens* issue was the extent to which the taxpayer had recovered its previously deducted bad debt reserve. Our holding in *Citizens* was simply a re-

12. § 337. *Gain or loss on sales or exchanges in connection with certain liquidations*
   (a) *General Rule.*—If—
     (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
     (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.
26 U.S.C. § 337(a).

iteration of the holding in *Nash,* that the receivables had to be valued on the basis of face value less bad debt reserve. *Citizens* did not involve an adjustment of the tax basis.

In the case before us, whatever may have been the actual value of the inventory at the time of the transfer, the "basis of . . . the property exchanged," Section 358(a)(1), remained the same as it appeared in the partnership's books —zero. As to the distributees, the "basis of the . . . [stock] permitted to be received under . . . [Section 351] shall be the same as that of the property exchanged"—zero. Section 358(a)(1).

As to the corporation, according to Section 362(a) "the basis shall be the same as it would be in the hands of the transferor [partnership]. . . ." This must be zero as well. Accordingly, the taxpayer cannot prevail in his contention that he is entitled to a basis for the inventory in the amount of $351,266.05.

### III.

▮ Appellant raised at oral argument a question which, on first blush, is extremely attractive and appealing. It questions the fundamental fairness of the Commissioner's action in requiring a corporation to change from a cash to an accrual basis without permitting adjustments to the predecessor partnership. We note, however, that appellant does not dispute the Commissioner's determination that its use of the cash receipts and disbursements method of accounting with respect to purchases and sales,

without taking into account merchandise on hand at the beginning and end of the year did not clearly reflect income. (Appendix at 18a).[13]

The argument is premised on the history of IRS audits of the previous partnership books, and the failure of the Commissioner to direct that the partnership change from a cash to an accrual basis. To this is added the reality that the identical partnership business was continued by the corporation with present stock ownership reflecting past partnership interests. The argument continues: requiring the corporate taxpayer to make a sudden change in accounting methods, generating huge new tax liabilities, is basically unfair to the taxpayer; that at the very least, there should now be permitted a reopening of the partnership books to allow for adjustments under 26 U.S.C. § 481 so that a new basis for an opening inventory may be permitted and a distribution of increased tax liabilities shared by the previous partnership.

▮ Where a method of accounting differs from that under which the taxpayer's income for a preceding calendar year was computed, Section 481(a) provides for adjustments in previous years which are determined to be necessary solely by reason of the change, in order to prevent an amount from being duplicated or omitted. Notwithstanding the adjustment provisions of Section 481(a), a corporation formed for a business purpose is a separate entity and a separate taxpayer from the stockholders who are responsible for its creation.

13. Where the Commissioner has accepted over a long period of years or approved a method of accounting by a taxpayer, this fact will be given weight in determining whether the Commissioner is justified in changing the method used by such taxpayer. Ezo Products Co., 37 T.C. 385, 391 (1961); Geometric Stamping Co., 26 T.C. 301 (1956). The Commissioner's authority to order a change in accounting methods when the taxpayer has regularly employed a consistent method depends upon the validity of his finding that the taxpayer's method does not clearly reflect income. Glenn v. Kentucky Color & Chemical Co., 186 F.2d 975 (6th Cir. 1951). The Commissioner is not estopped from computing a taxpayer's income on an accrual method of accounting because he has not objected to the method used by the taxpayer in his examination of prior returns. Caldwell v. Commissioner, 202 F.2d 112 (2d Cir. 1953). The Commissioner's regulation requiring that purchases and sales be reported on an accrual basis where it is necessary to use an inventory is one of long standing and has received the approval of the courts. Iverson's Estate v. Commissioner, 255 F.2d 1 (8th Cir. 1958), cert. denied, 358 U.S. 893, 79 S.Ct. 154, 3 L.Ed.2d 120 (1958).

Moline Properties v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943). And because of the separate taxable corporate entity, it has been held that where the change in the accounting practices is ordered for the first year of the corporation's existence, the corporation had no preceding taxable year, and, therefore, Section 481 is inapplicable. Ezo Products Co., *supra*, at 394. "Equally clearly, section 481 may be applied only to the petitioner [corporation] and not to make adjustments with respect to its predecessor [partnership]." Dearborn Gage Co., 48 T.C. 190, 198 (1967) citing E. Morris Cox, 43 T. C. 448 (1965); Ezo Products Co., *supra*.[14]

Judge Tannewald's observations in *Dearborn* seem pertinent to our facts: "We recognize that, if petitioner [corporation] had never been formed, and the predecessor partnership had continued in business, and the issue before us involved a comparable change in the latter's method of accounting for overhead costs, respondent . . . would, under the applicable decisions, have been required, in making the necessary computations, to . . . [make adjustments] both in the opening inventory and closing inventory for the . . . [previous years permitted by Section 481]. Thus,

petitioner—a taxpayer separate and distinct from its predecessor—appears to fare worse than its predecessor would have. We also recognize . . . the tax benefit of the deductions . . . taken by petitioner's predecessor may not have been as great as the tax burden which our rationale now requires petitioner to bear, *e.g.*, because the partners may have been in lower tax brackets or the partnership may have operated at a loss in some of the prior years. Moreover, if the ownership of petitioner's stock had changed prior to the taxable years herein involved, the economic effect of the tax benefit would not inure to, nor would the tax burden fall upon, the same persons. But these are nothing more than some of the myriad of different consequences which may result from a change to the corporate form of doing business or from the acquisition of stock of a corporation rather than corporate assets." 48 T.C. at 199–200 (footnote omitted).

Applied to this case, these principles preclude a judicial command that the Commissioner make adjustments in the predecessor business entity to supplement the direction that the new corporate taxpayer convert to an accrual basis.[15]

---

14. "The critical question which we must resolve is whether . . . [there can be adjustments] in opening inventory for 1957. In so doing, we must decide which of two general principles applies. The first principle requires that opening inventory must be computed on the same basis as closing inventory . . . The second principle requires that, . . ., in a tax free exchange such as occurred herein when the predecessor partnership transferred its assets to petitioner, the basis of the transferred assets in the hands of the latter is the same as it was in the hands of the former. In implementing this second principle, it has been held that the basis of initial opening inventory in the hands of the transferee corporation should not be adjusted in order to correct for an erroneous method of accounting for that inventory by the predecessor transferor."
Dearborn Gage v. Commissioner, *supra*, at 198.

15. Had these applicable principles permitted an adjustment to the predecessor partnership accounting principles, any attempt by the Commissioner to increase the tax liabilities of the partners would probably be barred by the statute of limitations. In Pursell v. Commissioner, 38 T.C. 263, 276, (1962) aff'd. per curiam, 315 F.2d 629 (3d Cir. 1963), we considered and rejected the approach similar to that urged by the taxpayer here: "Petitioners' argument, if sustained, would logically require an examination of every taxable year that . . . [taxpayer] has been in business, since it appears that the sale of merchandise has always been an income producing factor. Section 481 would have to be interpreted as permitting the correction of errors long since ordinarily barred by the statute of limitations. We do not believe that Section 481 sanctions such corrections, even if they could be accurately determined."

We have carefully considered each of appellant's contentions and have concluded that the judgment of the district court will be affirmed.