Julius F. **BISHOP**, Dorothy P. Bishop, Transferees of Colonial Feed Co., Inc., Plaintiffs,

v.

The **UNITED STATES** of America, Defendant.

Julius F. **BISHOP**, Dorothy P. Bishop, Transferees of Chickadee Farms, Inc., Plaintiffs,

v.

The **UNITED STATES** of America, Defendant.

Julius F. **BISHOP**, Dorothy P. Bishop, Transferees of Bishop's Breeding Farms, Inc., Plaintiffs,

v.

The **UNITED STATES** of America, Defendant.

Civ. A. Nos. 724–726.

United States District Court, M. D. Georgia, Athens Division.

Jan. 7, 1971.

Alston, Miller & Gaines, Atlanta, Ga., for plaintiffs.

Walker P. Johnston, Jr., U. S. Atty., Macon, Ga., for defendant.

BOOTLE, Chief Judge:

These are civil actions brought by the plaintiffs as transferees of Colonial Feed Company, Inc., Chickadee Farms, Inc., and Bishop's Breeding Farms, Inc., for the recovery of $603.24 and $139.24, $3,-619.85 and $799.34, and $8,963.70 and $2,069.01 in federal income taxes and interest respectively for the three corporations' fiscal years ending April 30, 1962 as to Colonial Feed Company, Inc., and Bishop's Breeding Farms, Inc., and June 30, 1962 as to Chickadee Farms, Inc., plus statutory interest on these amounts. The question involved is whether the tax benefit rule should be applied to require the three corporations to include in gross income amounts which are attributable to deductions taken in prior years for flocks of chickens which were later sold in bulk pursuant to a Section 337 liquidation.

The cases were consolidated and tried jointly to the Court without a jury upon stipulated facts which may be summarized.

## THE FACTS

Plaintiff Julius F. Bishop was the sole shareholder of the three corporations above named. After the adoption of a plan of liquidation on February 1, 1962, each of the corporations sold substantially all of its assets to Master Mix Feed Mills, Inc., and each distributed all of its assets in liquidation to its sole shareholder Julius F. Bishop. Income tax deficiencies which form the basis of these suits were assessed against Bishop by virtue of his status as transferee of the assets of the three corporations. Plaintiff Dorothy P. Bishop became subject to the tax deficiencies by virtue of joining with her husband in the filing of a joint income tax return for the year 1962.

After paying the assessed deficiencies plus interest, filing appropriate claims for refund and awaiting their disallowance, plaintiffs brought these suits in the Northern District of Georgia and they were transferred to this Court by appropriate order of the United States District Court for the Northern District.

For the taxable periods in question each of the three corporations was engaged in the business of raising breeder hens to produce hatching eggs. The corporations purchased day-old baby chicks and housed them for 90 days on premises owned or leased by the corporations. After the chicks were 90 days old they were grown on a range for an additional 90 days. After the expiration of this time the chicks were considered mature and were placed in laying houses to produce fertilized eggs for subsequent sale to a hatchery.

For all periods since their inception the corporations have reported for federal income tax purposes on the accrual method of accounting. In preparing their federal income tax returns the

corporations consistently computed inventories of the birds held for production of hatching eggs at the end of each year on the "farm-price" method. Under the farm-price method of computing inventories all of the chickens were valued at the end of each accounting period at the current price for meat at the nearest market, less the estimated direct costs of disposition. The use of this method of inventory had the effect of valuing hens which had begun their laying cycles at a figure lower than cost and thereby reducing taxable income in profit years. This inventory method resulted in a valuation for hens which had not begun their laying cycles at an amount equal to cost.

The total effects of this inventory valuation for the years in question were as follows:

| Corporation | Cost | Excess of Cost over Inventory Value (Amount deducted from gross income) | Sales Price | Farm-Price Inventory Value | Non-Recognized § 337 Gain |
|---|---|---|---|---|---|
| Colonial Feed Co., Inc. | $95,172.91 | $14,800.25 | $82,489.29 | $80,372.66 | $ 2,116.63 |
| Chickadee Farms, Inc. | $48,614.50 | $23,592.00 | $36,950.54 | $25,022.50 | $11,928.04 |
| Bishop's Breeding Farms, Inc. | $58,923.99 | $28,165.24 | $48,130.83 | $30,758.75 | $17,372.08 |
| TOTALS | $202,711.40 | $66,557.49 | $167,570.66 | $136,153.91 | $31,416.75 |

In computing its liability for federal income taxes for the final year of operation each of the three corporations reported the gain on the sale of its breeder hens which it claims is not recognizable as follows:

| Corporation | Sales Price of Birds | Farm-Price Inventory Value | Gain Not Recognized under § 337 |
|---|---|---|---|
| Colonial Feed Company, Inc. | $ 82,489.29 | $ 80,372.66 | $ 2,116.63 |
| Chickadee Farms, Inc. | 36,950.54 | 25,022.50 | 11,928.04 |
| Bishop's Breeding Farms, Inc. | 48,130.83 | 30,758.75 | 17,372.08 |
| | $167,570.66 | $136,153.91 | $31,416.75 |

The amounts which the corporations had deducted from gross income in prior years and the gain which the defendant asserts is not subject to nonrecognition under Section 337 of the Internal Revenue Code and which the defendant insists should be included in gross income are as follows:

| Corporation | Inventory Cost | Inventory Value | Excess of Cost over Inventory Value (amount deducted from gross income in prior years) | Asserted Taxable Gain |
|---|---|---|---|---|
| Colonial Feed Company, Inc. | $ 95,172.91 | $ 80,372.66 | $ 14,800.25 | $ 2,116.63 |
| Chickadee Farms, Inc. | 48,614.50 | 25,022.50 | 23,592.00 | 11,928.04 |
| Bishop's Breeding Farms, Inc. | 58,923.99 | 30,758.75 | 28,165.24 | 17,372.08 |
| | $202,711.40 | $136,153.91 | $66,557.49 | $31,416.75 |

Thus the plaintiffs contend that the items shown in the third column above representing the excess of sales price over farm-price inventory value and attributable to deductions taken from gross income in prior years by reason of the inventory reduction from cost to farm-price inventory are subject to nonrecognition under Section 337 of the Internal Revenue Code and are not taxable; whereas the defendant contends that said amounts are taxable by reason of the tax benefit rule. That is the question for decision.

### THE LAW AND DISCUSSION

After careful consideration of the excellent briefs submitted, this Court concludes that the legal issues involved in this case have been decided by the Tenth Circuit Court of Appeals in C. I. R. v. Anders, 414 F.2d 1283 (1969), cert. denied 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969); by the Ninth Circuit Court of Appeals in Spitalny v. United States, 430 F.2d 195 (1970), and by the United States District Court for the Western District of Arkansas in S. E. Evans, Inc. v. United States, 317 F.Supp. 423 (1970), and that said decisions should be followed in this case. The factual situations are so similar as to make the above mentioned decisions clearly applicable.

In the *Anders* case the selling corporation was engaged in the business of providing a rental service of laundered towels, seat covers, wiping and dusting materials, coveralls, and other items of apparel. The items had a useful life of 12 to 18 months or longer, but for federal income tax purposes the corporation charged the full cost of the rental items to expense accounts when purchased as a cost of materials and supplies. The taxpayer treated the recoupment of the expense charges realized in a sale of the rental items preceding the liquidation of the business as qualifying for nonrecognition of gain to the corporation under Section 337. The court held, however, that such recoupment was taxable under the tax benefit rule.

In the *Spitalny* case the taxpayer corporation was engaged in the business of cattle feeding. Pursuant to a plan of liquidation the corporation sold feed on hand for $177,437.37, the cost of which had been fully deducted as expense of doing business. The question presented was whether the corporation could treat the fully expensed feed as taking a zero basis and the full price received on sale as nonrecognized gain under Section 337. The Spitalny court quoted at length and approvingly from the *Anders* case and reached the same conclusion, namely, that the proceeds involved were taxable.

In the *Evans* case, the taxpayer corporation was liquidated pursuant to Section 337 and among its assets sold were parts and supplies which had been charged to expense in prior taxable years. The sum of $190,038.12 representing the cost of parts charged to expenses in prior taxable years was the subject of the assessment, said sum representing the amount deducted from income in the prior years. The court in the *Evans* case agreed with *Anders* and *Spitalny*.

The tax benefit rule is succinctly stated in 1 Mertens, Law of Federal Taxation § 7.34 (Rev.1969) as follows: " * * * [I]f an amount deducted from gross income in one taxable year is recovered in a later year, the recovery is income in the later year." The origin and development of the rule is admirably stated by Judge Collins of the Court of Claims in Alice Phelan Sullivan Corporation v. United States, 381 F.2d 399, 402, 180 Ct. Cl. 659 (1967) as follows:

"Formerly the exclusive province of judge-made law, the tax-benefit concept now finds expression both in statute and administrative regulations. Section 111 of the Internal Revenue Code of 1954 accords tax-benefit treatment to the recovery of bad debts, prior taxes, and delinquency amounts. Treasury regulations have 'broadened' the rule of exclusion by extending similar treatment to 'all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years. * * * '

"Set in historical perspective, it is clear that the cited regulation may not be regarded as an unauthorized extension of the otherwise limited congressional approval given to the tax-benefit concept. While the statute (i. e., section 111) addresses itself only to bad debts, prior taxes, and delinquency amounts, it was, as noted in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248 (1943), designed not to limit the application of the judicially designed tax-benefit rule, but rather to insure against its demise."

For the Court of Claims, Judge Collins then held that deductions taken by a taxpayer for a charitable contribution based on a conveyance of realty were properly classified as income upon recoupment of the property where the donee after deciding not to use the property for religious or educational purposes reconveyed it to the taxpayer. Of course, similarly bad debts written off and later recovered and similar deductions charged off and later recovered are restored to income. Commissioner of Internal Revenue v. First State Bank, 168 F.2d 1004

(5th Cir. 1948); West Seattle National Bank of Seattle v. C. I. R., 288 F.2d 47 (9th Cir. 1961). See also C. I. R. v. Kuckenberg, 309 F.2d 202 (9th Cir. 1962), cert. denied 373 U.S. 909, 83 S.Ct. 1296, 10 L.Ed.2d 411 (1963) [anticipated income on fully performed construction contracts]; Family Record Plan, Incorporated v. C. I. R., 309 F.2d 208 (9th Cir. 1962), cert. denied 373 U.S. 910, 83 S.Ct. 1297, 10 L.Ed.2d 411 (1963) [sale of customer contracts].

Thus normally and unless Section 337 should demand a contrary conclusion the tax benefit rule would clearly require that the amounts in controversy be taxable. Section 337 is copied as a footnote.[1] The plaintiffs vigorously contend that the taxpayer corporations fall literally within the provision of Section 337 reading "no gain or loss shall be recognized to such corporation from the sale or exchange by it of property", that they sold "property", namely, chickens, and that they realized a "gain", namely, the amounts here in dispute. They claim also that they fall literally within the provisions of Section 337(b) (2) since

1. § 337. Gain or loss on sales or exchanges in connection with certain liquidations
(a) General rule.—If—
(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.
(b) Property defined—
(1) In general.—For purposes of subsection (a), the term "property" does not include—
(A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business.

(B) installment obligations acquired in respect of the sale or exchange (without regard to whether such sale or exchange occurred before, on, or after the date of the adoption of the plan referred to in subsection (a) of stock in trade or other property described in subparagraph (A) of this paragraph, and
(C) installment obligations acquired in respect of property (other than property described in subparagraph (A)) sold or exchanged before the date of the adoption of such plan of liquidation.
(2) Nonrecognition with respect to inventory in certain cases.—Notwithstanding paragraph (1) of this subsection, if substantially all of the property described in subparagraph (A) of such paragraph (1) which is attributable to a trade or business of the corporation is, in accordance with this section, sold or exchanged to one person in one transaction, then for purposes of subsection (a) the term "property" includes—
(A) such property so sold or exchanged, and
(B) installment obligations acquired in respect of such sale or exchange.

the flock was sold to one person in one transaction and that therefore they are entitled to nonrecognition of gain under Section 337(a). Such was the contention in the *Anders* case, but there the court, tracing the history of Section 337, said:

> "We do not interpret § 337 as having the special effect on this transaction which the Tax Court finds. If 'under other circumstances' (*i. e.*, the sale of the rental items in question without a § 337 liquidation) the tax benefit rule and similar principles would have made the proceeds from the sale of such property taxable as ordinary income, they should also be taxable as ordinary income here. In § 337 Congress dealt with the problem of taxation on gain to both corporation and its stockholders where a sale of assets and subsequent liquidation occur, arising from the decisions in Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945), and United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L. Ed. 251 (1950). And the means employed was to provide for non-recognition of the gain to the corporation on the sale of property (as defined in § 337) by it before its liquidation. The statute used a definition of property in § 337 parallel to that of assets in § 1221 of the 1954 Code. Moreover, there is no provision in the statute showing an intent to alter or bar the application in cases under § 337 of tax benefit principles fashioned under other provisions of the Code. Therefore, we conclude that tax benefit principles are applicable here as under other statutory provisions and that § 337 intended no disregard of them in liquidation cases. See Citizens Federal Savings & Loan Association of Cleveland v. United States, 290 F.2d 932, 154 Ct.Cl. 305 (1961), and West Seattle National Bank of Seattle v. Commissioner [of Internal Revenue,] 288 F.2d 47 (9th Cir. 1961.)"

The court went further and said:

> "The fact that a transaction involves disposition of property does not compel treatment of the proceeds as gain from such transfer. (Citing cases). Instead, we conclude that tax benefit principles call for the treatment of the proceeds not as gain from the sale of property, but as ordinary income which was deducted on its purchase."

By footnote 4, the *Anders* court said:

> "See Pridemark v. Commissioner [of Internal Revenue,] supra, 345 F.2d 35 (3 Cir.) at 45, and Merchants National Bank of Mobile v. Commissioner [of Internal Revenue,] 199 F.2d 657 (5th Cir. 1952), applying the tax benefit rule and denying capital gains treatment under the predecessor to § 1221."

The court in Pridemark v. Commissioner, *supra*, stated the purpose of Section 337 as being "to avoid a double incidence of *capital gains* taxation—once when capital assets are sold by the corporation, and again on distribution of the proceeds to the shareholders." (Emphasis supplied).

Section 337 provides for nonrecognition of gain from the sale of property under certain circumstances. Gain from the sale of property is covered by the capital gain provisions of the Code. The nonrecognition of gain from the sale of property accorded by Section 337 has reference therefore to a sale of property covered by Section 1221 and to that section the application of the tax benefit rule provides an unstated exception.

Judge Holmes, for the Fifth Circuit, in Commission of Internal Revenue v. First State Bank, *supra*, after recognizing the well settled principle that when a deduction for income tax purposes is taken and allowed for debts deemed worthless recovery on the debts in a later year constitute taxable income for that year to the extent that a tax benefit was received from the deduction in a prior year, said: "Thus, when the tax benefit for a bad debt is obtained, the debt loses its nature as capital, and becomes representative of that portion of the taxpayer's income which was not taxed."

This court has not overlooked plaintiffs' contentions that some prior drafts

of Section 337 contained somewhat different language and their argument that such language invites a different interpretation of Section 337 than that given in the cases above cited and now approved by this court. That legislative history as cited by counsel for plaintiffs has been considered and found unconvincing.

In sum, and adopting the contentions and to a great extent the language of counsel for defendant, the taxpayer corporation received a total amount of $167,-570.66 for hens, part of the cost of which they had in prior years deducted from gross income as costs of goods when the hens reached their laying period. Such deductions decreased the corporations' taxable income and their income tax for those years. Once these deductions were taken the hens took on a reduced basis and the result is that the corporations had a "gain" on the sale of the hens and that "gain" is actually a recovery of part of the costs of the hens. It is only when an expense deduction is allowed for the hens in issue and Section 337 is attempted to be applied to make the sales price tax free that any "gain" to the corporation is involved. To allow this "gain" to pass tax free to the corporations would confer a double tax benefit on the corporations, (1) a deduction of the costs of the hens in a prior year, and (2) what amounts to still another deduction (through nonrecognition) in the year of the liquidated sale. The purpose of precluding a double tax benefit through the use of deductions spawned the tax benefit rule. Under this rule $31,416.75 must be treated as a recovery of the ordinary income which escaped taxation in the prior years by reason of the expense deductions rather than as unrecognized "gain" from a sale of property in a Section 337 liquidation. It having been stipulated that the prospect of acquiring a going concern motivated Master Mix to pay a price higher than the prevailing market price for hens, the plaintiffs contend that this higher price can be attributed to the in place going concern or good will value of the inventory.

That stipulation of those contentions are irrelevant and not controlling here. What controls here is the fact that the corporations received the benefit of prior deductions with respect to the hens which were later sold at a "gain" and that such "gain" is a recovery of the deductions taken in the prior years. If the plaintiffs contend further that the "gain" under the facts of this case is a result of appreciation in the value of the hens this contention would ignore the fact that the word "appreciation" means rise in value. These hens did not increase in value; the market price for the chickens had not changed, nor had there been any other occurrence which would have caused the hens to increase in value. The "gain" is attributable to the deductions the corporation had taken in prior years. When the hens reached their laying cycle the corporations reduced the inventory value of the hens to an amount equal to the market price for the meat less estimated cost for disposition notwithstanding the fact that these hens were just starting their income producing cycle at that time. When Master Mix purchased the hens in question they were still in their laying cycle and were thus income producing. The price Master Mix paid for the hens in excess of their value on the corporations' books, that is $31,416.75, was actually a recovery by the corporations of amounts they had already deducted when they reduced their book value of the chickens, which were in their egg laying cycle, to an amount equal to the meat value of the chickens less estimated cost of disposition. Thus the "gain" is attributable to the prior deductions taken by the corporations and the tax benefit rule must be applied to prevent the corporations from getting a double tax benefit. The case of Nash v. United States, 398 U.S. 1, 90 S.Ct. 1550, 26 L.Ed.2d 1 (1970) does not militate against these conclusions. The Court there held that the tax benefit rule did not require the restoration of bad debt reserves to income in a Section 351

transfer when such reserves were found to be no longer *necessary*. The basis for the Court's decision was that the end of the "need" for the reserves was not the same as their "recovery". The *Nash* case is distinguishable from the instant case because here the cost of the hens *has been recovered*. The Court made it clear that the tax benefit rule does apply where there has been a recovery. In this connection, see West Seattle National Bank of Seattle v. C. I. R., *supra*, holding that upon a sale of corporate assets pursuant to a plan of liquidation with accounts receivable being sold at face value taxpayer's reserves for bad debts constitute ordinary income taxable as such and not a "gain" free from tax.

Counsel for defendant may prepare an appropriate judgment and present the same after affording counsel for plaintiffs opportunity for suggestions as to form.