ESTATE OF DAVID B. MUNTER, DECEASED, ANDREW M. GREEN-STEIN, MANUEL D. GOLDMAN AND SUZANNE M. COHEN, EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

GERTRUDE M. DEMERER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8178–71, 1534–72.    Filed March 19, 1975.

*Andrew M. Greenstein,* for the petitioners.
*John E. White,* for the respondent.

OPINION

IRWIN, *Judge:* Respondent determined a deficiency in income tax of Neat Laundry, Inc., for the taxable year 1967 in the amount of $75,190.16, and notified petitioners that the following liabilities, constituting their liability as transferees of the assets of the corporation, would be assessed against them:

| *Docket No.* | *Transferee liability* |
| --- | --- |
| 8178–71 | $75,190.16 |
| 1534–72 | 61,781.97 |

The issues for determination are: (1) Whether Neat Laundry, Inc., is required under the tax benefit rule to include in its 1967 income the amount received from the sale of its previously expensed rental items even though such sale was made pursuant to a plan of complete liquidation under section 337;[1] and (2) whether the method of accounting employed by Neat Laundry, Inc., whereby the cost of rental items purchased and sold in 1967 was claimed as an expense deduction, clearly reflects its taxable income for 1967.

All of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, are found accordingly.

Petitioners Andrew M. Greenstein, Manuel D. Goldman, and Suzanne M. Cohen are the duly appointed and acting executors of the Estate of David B. Munter, who died on July 2, 1967, having been so appointed by the Surrogate's Court of Monroe County, N.Y., on July 26, 1967. At the time of the filing of the executors' petition with this Court, the office of the Estate of David B. Munter was located in Rochester, N.Y.

Petitioner Gertrude M. Demerer is an individual residing in Hallandale, Fla., at the time of the filing of her petition with this Court.

Neat Laundry, Inc. (hereinafter referred to as Neat), was a New York corporation organized under the laws of the State of

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

New York on January 12, 1948, to engage, among other things, in the business of renting cleaned and laundered sheets, pillow cases, towels, table cloths, napkins, industrial and commercial uniforms and garments, wiping cloths and materials, other textiles and apparels, and in general to conduct an industrial and other laundry business.

Neat's customers consisted of restaurants, hotels and motels, various industrial users of wiping rags, walk-on mats and dust control devices, and those whose business required its employees to be appropriately clothed in industrial uniforms. A substantial amount of the rental business was handled pursuant to 1- and 2-year lease agreements with the number of linen items and garments furnished by Neat dependent solely upon the requirements of its customers. The useful life of most of the rental items was 12 to 18 months, depending on the type of item, the frequency of its cleaning, and the use to which it was put.

Neat timely filed a Federal income tax return for each of the calendar years 1965, 1966, and 1967 with the district director of internal revenue at Buffalo, N.Y., and reported gross receipts of $502,472.95, $592,436.29, and $497,708.20, respectively, derived from the following sources:

|  | 1965 | 1966 | 1967 |
|---|---|---|---|
| Rental of linen supplies _____ | $327,452.51 | $368,095.59 | $278,112.35 |
| Rental of commercial garments | 37,470.79 | 82,254.87 | 84,958.12 |
| Towel rental _____ | 23,511.39 | 26,312.10 | 18,528.51 |
| Rental of industrial uniforms __ | 99,416.60 | 96,593.47 | 91,668.85 |
| Dust control (wiping rags, etc.)_ | 8,701.60 | 19,816.40 | 24,210.11 |
| College linen supply rental ____ | 5,786.00 | 0 | 0 |
| Resale of items purchased ____ | 134.06 | 2,363.84 | 0 |
| Rag sales_____ | 0 | 0 | 230.26 |
| Total gross receipts _____ | 502,472.95 | 595,436.29 | 497,708.20 |

For Federal income tax purposes, Neat charged the cost of the linen supplies and other rental items to an inventory account at the time they were purchased. When a rental item was first placed in service by delivery to the customer's place of business, the cost of such item was removed from the inventory account and charged to the applicable expense account. The inventory value reported by Neat in the balance sheets on its Federal income tax returns as of the end of each taxable year reflected the aggregate cost of the purchased rental items not yet placed in service.

On its Federal income tax returns for the taxable years 1965, 1966, and 1967, Neat claimed deductions for "Cost of Goods Sold" in the amounts of $295,288.17, $294,739.40, and $181,514.30, respectively. Such deductions included the cost of rental items placed in service during the years, computed as follows:

|  | 1965 | 1966 | 1967 |
|---|---|---|---|
| Beginning inventory of linen supplies__ | $2,213.00 | $2,398.00 | $646.00 |
| Purchases: |  |  |  |
|     Linen supplies_____ | 70,474.05 | 51,618.00 | 35,636.86 |
|     Garments_____ | 19,165.84 | 7,746.68 | 0 |
|     Shirts _____ | 9.38 | 0 | 0 |
|     Rags _____ | 86.02 | 2,221.46 | 0 |
|     Industrial uniforms _____ | 23,589.49 | 22,093.42 | 32,290.09 |
|     Aprons_____ | 0 | 0 | 2,966.41 |
|     Dust control supplies _____ | 0 | 1,459.14 | 1,203.26 |
|     Linen conservation on |  |  |  |
|         customer premises _____ | 2,377.46 | 432.91 | 0 |
|     Linen conservation at laundry_____ | 22.40 | 146.72 | 0 |
|     Industrial embroidery _____ | 1,945.81 | 1,952.22 | 0 |
|     Vacumats_____ | 0 | 1,977.85 | 0 |
| Total _____ | 119,883.50 | 92,046.40 | 72,742.62 |
| Less: Ending inventory of linen |  |  |  |
|     supplies _____ | 2,398.00 | 646.00 | 0 |
| Total cost of rental |  |  |  |
|     items placed in service _____ | 117,485.50 | 91,400.40 | 72,742.62 |

Neat reported taxable income of $3,664.54, $37,324.41, and $2,321.34 on its Federal income tax returns for the taxable years 1965, 1966, and 1967, respectively.

On September 19, 1967, Gertrude M. Demerer and the executors of the Estate of David B. Munter, being all of the shareholders of Neat, and Suzanne I. Munter, Walter E. Loebmann, Andrew M. Greenstein, and Gertrude Demerer, being all the directors of Neat, unanimously voted to sell the corporate assets and completely liquidate Neat within 12 months. Following the adoption of the liquidation resolution, Neat entered into an agreement dated September 19, 1967, with Consolidated Laundries Corp.[2] (hereinafter referred to as Consolidated) whereby Consolidated agreed to purchase Neat's linen supply and industrial uniform business for the sum of $350,250. Paragraph 4 of the agreement provided that the total

[2] Name subsequently changed on Apr. 3, 1968, to Sears Industries, Inc.

purchase price of $350,250 was to be applied and allocated as follows:

(a) All laundry, office and plant machinery and equipment, all trucks and vehicles, all furniture and fixtures _____ $100,000

(b) All used and new linens and garments, laundry supplies, office supplies and stationery, towel cabinets, bags, hampers, and all other personal property used in connection with service to the customers of the Seller_____ $175,000

(c) All outstanding accounts receivable of customers presently being served by the Seller _____ $55,250

(d) All customer contracts, customer lists, customer cards, route books, route lists and all other books and records pertaining to service to customers together with all right, title and interest of the Seller in and to the name "Neat Laundry" and all of the Seller's right, title and interest in and to the telephone number or numbers used by it _____ $20,000

The agreement of September 19, 1967, was supplemented and amended by a letter dated November 19, 1967, from Neat to Consolidated. Pursuant to the terms of this letter, the final selling price of the accounts receivable was reduced from $55,250 to $45,898.68, thereby reducing the aggregate sale price of all of the assets to $340,898.68.

The sale of assets pursuant to the agreement with Consolidated was consummated on or about September 22, 1967, at which time appropriate bills of sale and instruments of transfer and assignment were delivered to Consolidated and Consolidated delivered to Neat its series of promissory notes and cash representing the purchase price.

On October 16, 1967, Suzanne I. Munter, president of Neat, submitted a Corporate Dissolution or Liquidation Information Return (Form 966) to the district director of internal revenue at Buffalo, N.Y.

On Schedule D of its Federal income tax return for the taxable year 1967 Neat reported a gain of $108,943.29 from the sale of its assets to Consolidated, computed as follows:

| Kind of property | Sales price | Depreciation allowed | Cost basis | Gain or (loss) |
|---|---|---|---|---|
| Accounts receivable___ | $45,898.68 | 0 | $53,998.41 | ($8,099.76) |
| Uniform and linen supplies rented to customers_____ | 175,000.00 | 0 | 0 | 175,000.00 |
| Machinery and equipment_____ | | $181,598.58 | 284,673.08 | |
| Cabinets and containers_____ | 100,000.00 | 19,561.62 | 31,290.29 | (61,706.95) |
| Delivery equipment___ | | 32,954.38 | 65,890.52 | |
| Office equipment____ | | 13,181.78 | 17,090.81 | |
| Leasehold improvements_____ | | 11,679.87 | 21,738.48 | |
| Business records and contracts (goodwill)_ | 13,000.00 | 0 | 9,250.00 | 3,750.00 |
| Totals _____ | 333,898.68 | 258,976.23 | 483,931.62 | 108,943.29 |

In computing the reported gain on the sale of its business records, customer contracts, and goodwill, Neat reduced the sales price from $20,000 to $13,000 to reflect the amount ($7,000) of expenses incurred to effectuate the sale of all of the assets to Consolidated. On its 1967 income tax return Neat claimed non-recognition of the entire amount of the reported gain of $108,943.29 pursuant to section 337.

None of the officers, shareholders, or directors of Neat were officers, shareholders, or directors of Consolidated as of September 19, 1967, or as of November 19, 1967. As of September 19, 1967, petitioners Andrew M. Greenstein, Manuel D. Goldman, and Suzanne M. Cohen, as executors of the Estate of David B. Munter, owned 80 shares of the common stock of Neat, which shares represented 80 percent of the issued and out-standing capital stock of Neat. As of such date, the remaining 20 shares of stock of Neat were owned by petitioner Gertrude M. Demerer.

Pursuant to the plan of complete liquidation, Neat's assets were distributed to its shareholders as follows:

| Date of distribution | Shareholder | Total value of assets distributed |
|---|---|---|
| Jan. 4, 1968_____ | Estate of David B. Munter | $88,000.00 |
| Jan. 4, 1968_____ | Gertrude M. Demerer | 22,000.00 |
| June 12, 1968 _____ | Estate of David B. Munter | 152,000.00 |
| June 12, 1968 _____ | Gertrude M. Demerer | 38,050.00 |

From Goldstein, Goldman, Kessler,
and Underberg, trust account

| | | |
|---|---|---|
| Nov. 18, 1968 _____ | Estate of David B. Munter | $5,647.88 |
| Nov. 18, 1968 _____ | Gertrude M. Demerer | 1,411.97 |
| Mar. 26, 1969 _____ | Estate of David B. Munter | 1,280.00 |
| Mar. 26, 1969 _____ | Gertrude M. Demerer | 320.00 |

The total value of assets received by petitioners Andrew M. Greenstein, Manuel D. Goldman, and Suzanne M. Cohen, as executors of the Estate of David B. Munter, was $246,927.88. Petitioner Gertrude M. Demerer received, in total, assets valued at $61,781.97.

On September 19, 1968, Neat caused to be filed a certificate of dissolution with the Department of State of the State of New York and its corporate existence ceased.

Andrew Greenstein, as one of the executors of the Estate of David B. Munter, and Gertrude Demerer have each executed a transferee agreement whereby they have assumed and agreed to pay the amounts of any Federal income taxes finally determined as due and payable by Neat for the taxable year 1967 to the extent of their liability at law or in equity as transferees of Neat's assets.

In the explanation of the liabilities to be assessed against petitioners, the Commissioner determined that the method of accounting employed by Neat did not clearly reflect its income and determined that no deduction is allowable to Neat for the cost of linen supplies purchased in 1967 and sold to Consolidated. The Commissioner further determined that the sum of $102,257.38 derived by Neat from the sale of the linen supplies to Consolidated represented a recovery of amounts deducted by Neat in 1965 and 1966.

Petitioners contend that Neat is entitled to nonrecognition of the gain realized on the sale of the rental items pursuant to its liquidation and sale of assets, notwithstanding the tax benefit rule, since there was compliance with the terms and provisions of section 337. In urging this result petitioners rely primarily upon D. B. Anders, 48 T.C. 815 (1967), revd. 414 F. 2d 1283 (C.A. 10, 1969), certiorari denied 396 U.S. 958 (1969), rehearing denied 396 U.S. 1031 (1970). Petitioners also contend that Neat's method of accounting for 1967 was proper.

Respondent, on the other hand, contends that the tax benefit doctrine is applicable to a liquidating corporation notwith-

standing its qualification under the nonrecognition of gain provisions of section 337. Respondent submits that Neat properly claimed and was allowed deductions on its 1965 and 1966 Federal income tax returns for the cost of linen supplies and other rental items purchased and placed in service in those years. Since Neat received a full tax benefit for the deductions claimed and allowed in 1965 and 1966, the gain of $102,257.88 realized upon the disposition of the rental items should be ordinary income to Neat for 1967. Respondent further contends that while Neat's method of accounting whereby it deducted the cost of rental items when placed in service clearly reflected its taxable income for the years 1965 and 1966, such method did not clearly reflect income for 1967. Neat's deduction of the cost of rental items purchased and placed in service in 1967 with no recognition of the offsetting gain from the sale of those items to Consolidated in 1967 resulted in a distortion of Neat's 1967 taxable income. Since Neat's method of accounting for 1967 did not reflect its taxable income, it was proper to recompute Neat's taxable income pursuant to section 446(b). In the alternative, respondent contends that if a deduction is allowable for the cost of rental items purchased in the year of sale, then that amount must be included in Neat's 1967 taxable income under the tax benefit rule. In urging the applicability of the tax benefit rule, respondent relies primarily upon *Commissioner v. Anders*, 414 F. 2d 1283 (C.A. 10, 1969), reversing 48 T.C. 815 (1967); *Spitalny v. United States*, 430 F. 2d 195 (C.A. 9, 1970); *Connery v. United States*, 460 F. 2d 1130 (C.A. 3, 1972); *Anders v. United States*, 462 F. 2d 1147 (Ct. Cl. 1972), certiorari denied 409 U.S. 1064 (1972), rehearing denied 410 U.S. 947 (1973).

We shall focus our attention first upon the issue of whether the tax benefit rule may override the nonrecognition provisions of section 337. This is our first opportunity to reassess our position on this issue since our reversal in *D. B. Anders, supra.* For the reasons to be set forth hereinafter, we shall no longer follow our decision in *D. B. Anders, supra.* [3]

---

[3] In making this determination we have given some consideration to views so recently espoused in *Bankers Union Life Insurance Co.*, 62 T.C. 661 (1974), at 675:

"This Court has recognized its obligation to promote uniform application of the internal revenue laws, *Jack E. Golsen, supra,* and for that reason we have not always followed reversals by the Courts of Appeals. See *Arthur L. Lawrence*, 27 T.C. 713 (1957), as modified by *Jack E. Golsen, supra.* But we also recognize that at times the best way for us to promote uniformity is to bow to higher authority, even though we may not agree with the views expressed thereby, particularly where there are no appellate courts supporting

The tax benefit rule provides that if an amount deducted from gross income is later recovered, the recovery is income in the year of recovery. However, to the extent that there is no tax benefit resulting from the deduction, the recovery is not included in income in the recovery year. While the rule is judicial in origin, it is applied to specific situations by certain Code provisions. See, for example, secs. 111, 1245, and 1250. Where not codified, the judicial rule continues. See Mertens, Law of Federal Income Taxation, sec. 7.34 (1969 rev.). See also O'Hare, "Statutory Nonrecognition of Income and the Overriding Principle of the Tax Benefit Rule in the Taxation of Corporations and Shareholders," 27 Tax L. Rev. 215 (1972). The instant facts present a tax benefit situation.[4] The only question is whether the tax benefit rule should override the nonrecognition provisions of section 337 in this instance.

Section 337 [5] was added by the 1954 Code in order to eliminate

our views. * * *"

[4] Sec. 162 and Sec. 1.162–3, Income Tax Regs., permit taxpayers to deduct the cost of property having a short useful life in lieu of capitalizing such costs. Since the cost of such property has been deducted as an expense, the adjusted basis of such property is zero, and therefore, if such "expensed" property is sold by the corporation, to the extent the amount realized does not exceed the prior deductions, there is a recovery of the deductions. However, to the extent the amount realized exceeds the amount of the prior deductions, that part is gain due to asset appreciation. O'Hare, "Statutory Nonrecognition of Income and the Overriding Principle of the Tax Benefit Rule in the Taxation of Corporations and Shareholders," at 222–223. In this instance there is no question that Neat realized an economic recovery from the deduction of the cost of the rental items.

[5] Sec. 337 provides, in part, as follows:

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

(b) PROPERTY DEFINED.—

(1) IN GENERAL.—For purposes of subsection (a), the term "property" does not include—

(A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business,

(B) installment obligations acquired in respect of the sale or exchange (without regard to whether such sale or exchange occurred before, on, or after the date of the adoption of the plan referred to in subsection (a)) of stock in trade or other property described in subparagraph (A) of this paragraph, and

(C) installment obligations acquired in respect of property (other than property described in subparagraph (A)) sold or exchanged before the date of the adoption of such plan of liquidation.

(2) NONRECOGNITION WITH RESPECT TO INVENTORY IN CERTAIN CASES.—

the uncertainties which arose under the 1939 Code when property was sold in connection with the complete liquidation of a corporation. S.Rept. No. 1622, 83d Cong., 2d Sess., p. 258 (1954). Under the 1939 Code, if the corporation was considered to have sold the property and the proceeds were considered to have been distributed to the shareholders, then there would be two taxes imposed with respect to the sale, one at the corporate level and one at the shareholder level. On the other hand, if the corporation was considered to have distributed the property in liquidation and the property was considered to have then been sold by the shareholders, only a single tax, imposed at the shareholder level, would be due. See *Commissioner v. Court Holding Co.*, 324 U.S. 331 (1945); *United States v. Cumberland Pub. Serv. Co.*, 338 U.S. 451 (1950). In enacting section 337 Congress intended to render unimportant the formalities of the transaction. See S.Rept. No. 1622, *supra;* Conf. Rept. No. 2543, 83d Cong., 2d Sess., p. 36 (1954). See also S.Rept. No. 1983, 85th Cong., 2d Sess., p. 29 (1958). For a recent discussion of the legislative history see *Central Tablet Manufacturing Co. v. United States,* 417 U.S. 673 (1974).

Subsection (a) of section 337 provides that if a corporation adopts a plan of complete liquidation and the corporation within the 12-month period beginning on the date of the adoption of the plan disposes of all of the corporate assets (less assets retained to meet claims) in complete liquidation, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period. Subsection (b) defines the term "property." It is clear that sales during the ordinary course of business within the 12-month period will result in ordinary gain to the corporation as if the corporation was not in the process of liquidation. See S.Rept. No. 1622, *supra.* Subsections (c) and (d) provide exceptions and a special rule not relevant to the instant situation. There is no question about Neat having satisfied the literal terms of section 337.

---

Notwithstanding paragraph (1) of this subsection, if substantially all of the property described in subparagraph (A) of such paragraph (1) which is attributable to a trade or business of the corporation is, in accordance with this section, sold or exchanged to one person in one transaction, then for purposes of subsection (a) the term "property" includes--
  (A) such property so sold or exchanged, and
  (B) installment obligations acquired in respect of such sale or exchange.

It is evident that the purpose of section 337 is to assure the *Cumberland* result, i.e., the absence of a corporate tax on asset appreciation; no purpose was disclosed to preempt tax benefit principles or other judicial doctrines. See Lyon & Eustice, "Assignment of Income: Fruit and Tree as Irrigated by the P. G. Lake Case," 17 Tax L. Rev. 295, 415 et seq. (1962). See also *Midland-Ross Corp., Tr. of Sur. Com. Corp. v. United States*, 485 F. 2d 110, 114–115 (C.A. 6, 1973), where the following is noted:

Reference to the legislative history of Section 337, however, suggests that its seemingly clear language does not fully comport with its purpose. Section 337 was enacted to eliminate the formalism created by the holdings in Commissioner v. Court Holding Co., 324 U.S. 331 * * * (1945), and United States v. Cumberland Public Service Co., 338 U.S. 451 * * * (1950), by establishing a parity of tax treatment at the corporate level whether a liquidating corporation sells its assets and thereafter distributes the proceeds to its shareholders in complete liquidation or, conversely, distributes its assets in kind to its shareholders in complete liquidation for sale by them. *See* S.Rep. No. 1622, 83d Cong. 2d Sess., at 258; [1954] 3 U.S. Code Cong. & Adm. News at 4896. *See also* Buckeye Union Casualty Co. v. Commissioner, 448 F.2d 228, 230 (6th Cir. 1971); Commissioner v. Kuckenberg, 309 F. 2d 202, 205-206 (9th Cir. 1962), cert. denied, 373 U.S. 909 * * * (1963); Frank W. Verito, 43 T.C. 429, 438–40 (1965); B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, para. 11.64 at 11–58 (3d ed. 1971).

Standing alone, the language of the statute does not appear to fully serve this purpose. Obvious problems arise in the context of a liquidating corporation's sale of receivables and other rights to income already earned, but not yet received, which are not expressly excluded from Section 337's nonrecognition provisions except to the extent of the installment obligation exclusion appearing in subsections (b)(1)(B) and (C). If such receivables and other rights to income were distributed in kind to a liquidating corporation's shareholders and thereafter sold by them so as to satisfy the *Cumberland Public Service Co.* holding, any gain from the sale would most certainly be attributed to the corporation under the assignment of income doctrine, notwithstanding the nonrecognition provisions of 26 U.S.C., § 336 for such distributions of assets in kind. *See, e.g.,* Wood Harmon Corp. v. United States, 311 F.2d 918, 921-926 (2d Cir. 1963); Williamson v. United States, 292 F.2d 524, 528-530, 155 Ct.Cl. 279 (1961). Yet, if the application of Section 337 were restricted only to the extent of its express exclusions, gain from the corporation's sale of these same assets within the statutory period would escape recognition by the corporation. Indeed, if carried to its extreme, this approach would afford Section 337's nonrecognition to gain from a corporation's sale of receivables arising from the prior sale of even those assets which are expressly excluded from the statute, such as inventory items, thus permitting a corporation to bring all gain within the nonrecognition provisions of the statute. *See* Note, Tax-Free Sales in Liquidation Under Section 337, 76 Harv.L.Rev. 780, 790–91 (1963).

In *D. B. Anders*, 48 T.C. 815 (1967), the facts were similar to the ones here.[6] In that case we held that the expensed property was property of the type covered by the nonrecognition provisions of section 337 and that the gain from the sale of such property was clearly granted nonrecognition by that section. It was our belief that the tax benefit rule should not be applied since it would "contravene the clear and unambiguous provisions of section 337(a)." 48 T.C. at 821. In that case the Commissioner did not question the propriety of the deductions.

On appeal the Tenth Circuit reversed our decision and held that the tax benefit rule does override the nonrecognition provisions of section 337. 414 F. 2d 1283 (C.A. 10, 1969). In making this determination, the Court of Appeals was of the opinion that section 337 was not intended to cause any disregard of tax benefit principles in liquidation cases. While the transaction involved a sale of property, the court determined that this does not compel treatment of the proceeds as gain from the sale. The increment of gain was attributable to the prior deduction and not to any asset appreciation. 414 F. 2d at 1288. In the circuit court's opinion there is an apparent implication that the only gain which is entitled to nonrecognition under section 337 is that which results from asset appreciation, i.e., a gain attributable to time and economics rather than tax accounting. See Murray, "Developing Uncertainties in Section 337 Liquidations—The Tax Benefit Rule and Other Problems," 23 Tax Lawyer 181, 182–184 (1969).

The Tenth Circuit decision in *Anders* was then followed by other courts. In *Spitalny v. United States*, 430 F. 2d 195 (C.A. 9, 1970), a corporation engaged in the business of cattle feeding, sold feed on hand, the cost of which had been fully deducted under section 162, pursuant to a plan of liquidation. The deduction of the cost of feed and the recovery of that deduction

---

[6] Like Neat, the corporate taxpayer in that case had been engaged in the business of providing a rental service of laundered apparel and other items and pursuant to sec. 162 it deducted the cost of the rental items. In May 1961, the corporation adopted a plan of complete liquidation and within the following 12-month period sold all of its property, including the expensed property items, to a group of purchasers acting on behalf of another corporation. The corporation reported a gain arising out of the sale of its properties and claimed that sec. 337 applied. The reported gain included $233,000 gain on the sale of the expensed property items. Since this property had been expensed, its adjusted basis was zero and thus the total amount realized attributable to this property was all gain. The Commissioner contended that this portion of the gain (i.e., that portion resulting from the sale of the expensed property) was not entitled to nonrecognition under sec. 337 on the ground that the tax benefit rule applied, notwithstanding the literal terms of sec. 337.

by the sale pursuant to the plan of liquidation occurred during the same tax year; and the Commissioner contended that the tax benefit rule should apply. The Court of Appeals, reversing the District Court decision, *Spitalny v. United States*, 288 F. Supp. 650 (D. Ariz. 1968), which had relied upon *D. B. Anders, supra,* prior to its reversal, held that the recovery was income following the Tenth Circuit decision in *Anders.* Although the deduction and offsetting recovery occurred in the same tax year, the court concluded that—

tax benefit principles would seem to apply with even greater force in such a case as this.

* * * When costs are recovered in the taxable year in which they were incurred, the extent of deductible costs is accordingly reduced. Whether the Commissioner's ruling is regarded as disallowance of an item of expense or a restoration to income of the recovery is of no consequence. In neither case may the recovery be regarded as "gain" when so to regard it would result in a tax benefit the conferring of which serves to distort income. [430 F. 2d at 198.]

The court went on to find that there was no gain present which could be protected from recognition by the provisions of section 337 since the difference between the adjusted basis of zero for the property and the sale price of the property had been created by a "fictional conversion of * * * [the property] into a consumed item of expense." 430 F. 2d at 198. According to the Ninth Circuit opinion, this was not the type of gain that section 337 was designed to protect from recognition. The court finally noted that if the feed had been sold in liquidation at a price greater than cost, then the excess would represent gain entitled to nonrecognition under section 337.

In *Connery v. United States*, 460 F. 2d 1130 (C.A. 3, 1972), part of the consideration paid for corporate assets sold in connection with a plan of liquidation was for prepaid advertising, the cost of which had been deducted partially in the prior year and the rest in the year of sale. The Commissioner argued that (1) the portion allocable to the prior year constituted ordinary income to the extent of the tax benefit secured from the deduction taken in that year; and (2) the portion allocable to the year of sale must likewise be treated as ordinary income or as an offset to the deduction taken. Following *Commissioner v. Anders, supra,* and *Spitalny v. United States, supra,* the court held that the recovery constituted ordinary income to the extent of the tax benefit secured by the corporation from the deductions taken in

the prior year and in the year of sale, section 337 not preventing the application of the rule. With respect to the recovery of the deduction in the year of sale, the court followed the reasoning in *Spitalny.* See 460 F. 2d at 1133.

In *Anders v. United States,* 462 F. 2d 1147 (Ct. Cl. 1972), certiorari denied 409 U.S. 1064 (1972), rehearing denied 410 U.S. 947 (1973), a related case to *Commissioner v. Anders, supra,* the court held that the amount received from the sale of previously expensed rental items as a part of the sale of all the assets pursuant to a plan of liquidation did not constitute a gain from the sale of property within the purview of section 337. The amount received was taxable as ordinary income since the gain was not realized from the sale but from the reconversion of previously expensed items into property. The Court of Claims held that the tax benefit rule gives to the property sold its true basis and denies to it the benefit of an adjusted basis which is false and distorting. 462 F. 2d at 1149. The court noted that the rule is equally applicable to cases in which deduction and recovery occur in the same taxable year as well as to cases in which deduction and recovery occur in different taxable years.

It seems clear to us that tax benefit principles should apply in this situation. The $175,000 of the amount realized is attributable to deductions from which Neat had received a full tax benefit. If in addition to nonrecognition Neat should be entitled to the tax benefit resulting from the deductions attributable to the expensed property, then the corporation would be the recipient of an additional benefit which in our judgment is without legislative support and is clearly inconsistent with the general intent of Congress in enacting revenue laws. The result sought by petitioners certainly does not appear to be in "harmony with the * * * [Code] as an organic whole." Compare *Lewyt Corporation v. Commissioner,* 349 U.S. 237, 240 (1955).

While we agree with the Third, Ninth, and Tenth Circuits and the Court of Claims that situations such as the instant one call for the application of the tax benefit rule, we are inclined to put more stress on the primary purpose in enacting section 337, namely, the establishment of "a parity in tax treatment at the corporate level" in the *Court Holding–Cumberland* situations, than these courts have done.

In our judgment due consideration must be given to the unique relationship between sections 336 and 337. In this regard we note

the following language in *Midland-Ross Corp., Tr. of Sur. Com. Corp. v. United States, supra* at 118, wherein the Sixth Circuit, in determining that the assignment-of-income doctrine may override the nonrecognition provisions of section 337, concluded:

While recognizing that no hard and fast rule is likely to fit every case arising under Section 337, we further conclude that a corporation's recognition or nonrecognition of gain or loss[13] arising from the sale of property not expressly excluded under subsection 337(b), should generally be governed by the established doctrines of tax law applicable to distributions in kind under Section 336 * * * [Fn. omitted.]

Without necessarily subscribing to the Sixth Circuit's approach, we shall look at our own precedent under section 336 before rendering our decision.

Viewing the issue from this perspective, we turn to petitioners' reliance on *Commissioner v. South Lake Farms, Inc.*, 324 F. 2d 837 (C.A. 9, 1963), affirming 36 T.C. 1027 (1961), dealing with section 336. Although petitioners contend that the case stands for the proposition that tax benefit principles are inapplicable in a section 336 liquidation, the fact remains that respondent did not raise the applicability of these principles when the case was before us. Consequently, we find our opinion in that case to have little precedential value with respect to the issue presented herein. Since we have not ruled on the issue of whether the tax benefit rule may apply in a section 336 situation, we are free to make an independent ruling on its applicability in section 337 situations and thus find no impediment to our holding the principle to override section 337 with respect to the expensed property in this situation.[7]

Since we consider the tax benefit rule applicable to both the deductions taken in the prior years and in the year of sale, we need not consider respondent's section 446(b) argument.

Petitioners are, therefore, liable as transferees for the deficiency in income tax determined against Neat.

---

[7] Petitioners have also contended that to hold tax benefit principles applicable in this instance would put the decision in conflict with *Fribourg Nav. Co. v. Commissioner*, 383 U.S. 272 (1966). A similar argument was raised and rejected in *Commissioner v. Anders, supra* at 1288. While there is a degree of similarity between *Fribourg* and this case, we do not believe that the rationale of *Fribourg* was intended to be so expanded. We want to reemphasize, however, that our decision is limited only to situations involving the recovery of previously expensed items and should not be construed as necessarily extending to other areas of deductions.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

TANNENWALD, *J.,* concurring: I agree with the result reached by the majority and append these comments for two reasons: (1) To attempt to eliminate some of the confusion which seems to me to have arisen due to the play on words in which the courts have engaged in their efforts to avoid what they considered to be the plain language of section 337 and (2) the possible conflict which might be thought to exist between the majority opinions in this case and in *John T. Stewart III Trust,* decided this day (63 T.C. 682).

The need to assess and collect taxes at fixed and relatively short intervals underpins the principle of taxation that transactions which may possibly be subject to further developments substantially altering their character for tax purposes should nevertheless be treated as final and closed so that their tax consequences can be determined. *Burnet v. Sanford & Brooks Co.,* 282 U.S. 359 (1931); *United States v. Rexach,* 482 F. 2d 10 (C.A. 1, 1973). On the other hand, a taxpayer should not be permitted to take advantage of this governmental exigency to establish a distorted picture of his income for tax purposes. It is this countervailing consideration which spawned the tax benefit rule. See *Bishop v. United States,* 324 F. Supp. 1105, 1111 (M.D. Ga. 1971); *Mayfair Minerals, Inc.,* 56 T.C. 82, 86 (1971), affirmed per curiam 456 F. 2d 622 (C.A. 5, 1972). Compare *United States v. Skelly Oil Co.,* 394 U.S. 678, 684–685 (1969). The most common, and most nearly accurate, explanation of the rule is that it recognizes the "recovery" in the current year of taxable income earned in an earlier year but offset by the item deducted. *Commissioner v. Anders,* 414 F. 2d 1283 (C.A. 10, 1969), reversing 48 T.C. 815 (1967); *Alice Phelan Sullivan Corporation v. United States,* 381 F. 2d 399 (Ct. Cl. 1967); *West Seattle National Bank of Seattle v. Commissioner,* 288 F. 2d 47 (C.A. 9, 1961), affirming 33 T.C. 341 (1959); *Buck Glass Co. v. Hofferbert,* 176 F. 2d 250 (C.A. 4, 1949).

When the tax benefit rule is viewed in its true character—as a necessary counterweight to the consequences of the annual accounting principle—much of the difficulty of this case

disappears. Judicial preoccupation with the questions whether items like those involved herein are "property" (*D. B. Anders*, 48 T.C. 815 (1967)) or whether the proceeds from the disposition of such items constitute "gain" (*Anders v. United States*, 462 F. 2d 1147 (Ct. Cl. 1972)) becomes unnecessary. See also *S. E. Evans, Inc. v. United States*, 317 F. Supp. 423, 426–427 (W.D. Ark. 1970). Rather, the focus of inquiry is on three elements: (1) An amount previously deducted, (2) which resulted in a tax benefit, and (3) was recovered during the taxable year in issue. There can be no doubt that each of these requirements was met in the instant case.

There is no indication that Congress intended section 337 to override the above principles. That section extends nonrecognition in general to gains from liquidating transactions but preserves the taxability of income arising in the ordinary course of business. In this context, there is no reason to permit section 337 to exempt actual recoveries from tax where a tax benefit has been derived from income offsets in earlier years; they should retain the characteristics of ordinary business income. Cf. *Citizens' Acceptance Corporation v. United States*, 462 F. 2d 751 (C.A. 3, 1972); *Winer v. Commissioner*, 371 F. 2d 684 (C.A. 1, 1967), affirming T.C. Memo. 1966–99; *Citizens Federal S. & L. Assn. of Cleveland v. United States*, 290 F. 2d 932 (Ct. Cl. 1961). To hold otherwise would enable a taxpayer to enjoy what would amount to a "double" deduction. See *Bishop v. United States, supra.*

Petitioner's reliance on the application by analogy of *Fribourg Nav. Co. v. Commissioner*, 383 U.S. 272 (1966), is misplaced. In addition to the reasoning set forth in the majority opinion, I would note that the issue of recovery of depreciation is closely integrated with the specific provisions relating to adjustments to basis contained in section 1016(a). Depreciation has been and continues to be considered sui generis and the tension between the recovery of amounts previously deducted and the tax benefit rule has not been considered of such a character as to cause that rule to prevail. See sec. 1.111–1(a), Income Tax Regs. In this connection, it is not without significance that, in *Fribourg,* the Supreme Court made no reference whatsoever to the tax benefit rule. Moreover, it is at least open to question whether there is sufficient similarity between the expense deducted herein and the allowance for depreciation to support any argument by

analogy. Compare *Coca-Cola Bottling Co. of Baltimore v. United States*, 487 F. 2d 528 (Ct. Cl. 1973).

I now turn to the question of the correlation of the majority opinion herein with the majority opinion in *John T. Stewart III Trust, supra*. The latter opinion rejects the play-on-words efforts of prior decisions to avoid the applicability of section 337 (*Hollywood Baseball Association v. Commissioner*, 423 F. 2d 494 (C.A. 9, 1970), affirming 49 T.C. 338 (1968); *Pridemark, Inc. v. Commissioner*, 345 F. 2d 35, 42–45 (C.A. 4, 1965), affirming 42 T.C. 510, 536–538 (1964); *Coast Coil Co.*, 50 T.C. 528, 535 (1968) (alternative holding), affirmed per curiam 422 F. 2d 402 (C.A. 9, 1970); *Frank W. Verito*, 43 T.C. 429, 441 (1965)) and squarely holds that mortgaging service contracts are "property."[1] The opinion then articulates the distinction between cases involving the applicability of section 337 to a distribution in liquidation of a right to a fixed or calculable amount of income which has been earned or accrued (*Midland-Ross Corp., Tr. of Sur. Com. Corp. v. United States*, 485 F. 2d 110 (C.A. 6, 1973); *Family Record Plan, Incorporated v. Commissioner*, 309 F. 2d 208 (C.A. 9, 1962); *Commissioner v. Kuckenberg*, 309 F. 2d 202 (C.A. 9, 1962); cf. *Williamson v. United States*, 292 F. 2d 524 (Ct. Cl. 1961))[2] and a situation involving a distribution of a right to earn income in the future, or to receive income in the future where the amount has not become so fixed or calculable that distribution should produce taxability (cf. *Williamson v. United States, supra; Shea Co.*, 53 T.C. 135, 156–157 (1969); *United Mercantile Agencies*, 34 T.C. 808 (1960); *Pat O'Brien*, 25 T.C. 376, 384–385 (1955)). That articulation is accomplished upon the basis that if the distribution of a right to income would not produce taxability to the corporation under section 336, the gain from the sale of that right should be accorded the nonrecognition benefits of section 337.

Taking the same approach herein poses a problem because there is some difficulty in seeing how a distribution in liquidation under section 336 of an asset that has previously been expensed can constitute a "recovery" so as to justify the application of the tax benefit rule. Cf. *Commissioner v. South Lake Farms, Inc.*, 324 F. 2d 837 (C.A. 9, 1963), affirming 36 T.C. 1027 (1961). But cf. *Argus, Inc.*, 45 T.C. 63 (1965). Contrast the res-

---

[1] A fortiori, the rental linens are clearly "property."

[2] Compare *Sol C. Siegel Productions, Inc.*, 46 T.C. 15, 23 (1966).

pondent's recent acquiescence in *South Lake Farms, Inc.,* 1975–7 I.R.B. 6, with Rev. Rul. 74–396, 1974–2 C.B. 106. Compare *Nash v. United States,* 398 U.S. 1 (1970); *General Utilities Co. v. Helvering,* 296 U.S. 200 (1935); sec. 1.111–1(a)(2), Income Tax Regs. See O'Hare, "Statutory Nonrecognition of Income and the Overriding Principle of the Tax Benefit Rule in the Taxation of Corporations and Shareholders," 27 Tax L. Rev. 215, 233–238 (1972); Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders (3d ed.), secs. 11.62 and 11.65. The majority opinion herein expressly leaves open the question whether the tax benefit rule would apply to tax the corporation despite the provisions of section 336. Nevertheless, it cannot be gainsaid that if such taxability does not result, the tracking approach of the majority opinion in *Stewart* should produce a different result herein. Otherwise, the effect would be to create a potential for disparate tax treatment between sales of expensed property during liquidation at the corporate level and those made at the shareholder level following distribution of the expensed property in kind. In this way, yet another trap for the unwary like that created by *United States v. Cumberland Pub. Serv. Co.,* 338 U.S. 451 (1950), and *Commissioner v. Court Holding Co.,* 324 U.S. 331 (1945), would result—a condition that section 337 was designed to overcome. See *Waltham Netoco Theatres, Inc.,* 49 T.C. 399 (1968), affd. 401 F. 2d 333 (C.A. 1, 1968).

But even if this dichotomy between sections 336 and 337 should ultimately be held to exist in situations such as that involved herein, I am satisfied that the policy considerations upon which the tax benefit rule is posited are sufficiently strong to overcome the desirability of consistent application of those sections where the liquidating corporation actually receives property for the transfer of the expensed items. The presence of an actual economic benefit was recognized as possibly justifying the application of the tax benefit rule in *Nash v. United States,* 398 U.S. at 4. See also *Citizens' Acceptance Corporation v. United States,* 462 F. 2d at 751; *Bishop v. United States,* 324 F. Supp. at 1111–1112. And in *Commissioner v. South Lake Farms, Inc., supra,* the Court of Appeals inferred that differing results might obtain under sections 336 and 337. See 324 F. 2d at 839. Additionally, I note that, to the extent that the tax benefit rule does not apply, section 337 is given full force and effect in a situ-

ation such as is involved herein. See *Spitalny v. United States,* 430 F. 2d 195, 198 (C.A. 9, 1970).

One final word. As far as the 1967 taxable year is concerned, I am satisfied that, aside from any question of the applicability of the tax benefit rule, it was clearly appropriate for respondent, acting under section 446(b), to make the adjustment with respect to the rental items expensed in that year. See *Spitalny v. United States, supra* at 197.[3]

RAUM, *J.,* agrees with this concurring opinion.

---

[3] Respondent's concession that the method of accounting used by the corporation clearly reflected income in prior years does not preclude a challenge to that method for the year of liquidation. *Jud Plumbing & Heating, Inc.,* 5 T.C. 127 (1945), affd. 153 F. 2d 681 (C.A. 5, 1946).

